2005 UT App 144

**STATE of Utah, Plaintiff and Appellant**

v.

**Michael Von FERGUSON, Defendant and Appellee.**

**No. 20040077–CA.**

Court of Appeals of Utah.

March 24, 2005.

Mark L. Shurtleff, Atty. Gen., and J. Frederic Voros Jr., Asst. Atty. Gen., Salt Lake City, for Appellant.

Vernice S. Trease and Debra Meek Nelson, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and ORME.

OPINION

ORME, Judge:

¶ 1 This case arises from a much publicized incident initially reported as involving a possible rooftop terrorist in Salt Lake City. *See Rooftop Gunman Spurs S.L. Search,* Deseret News, Mar. 24, 2003, at B2; Ashley Broughton, *Man Charged in Rooftop Gun Incident,* Salt Lake Tribune, Mar. 27, 2003, at C2. We have before us an interlocutory appeal from an order by the trial court reducing a charge of violating a protective order, under Utah Code section 76–5–108, from a third degree felony to a class A misdemeanor. *See* Utah Code Ann. § 76–5–108 (2003). We affirm in part, and reverse and remand in part.

BACKGROUND

¶ 2 On January 21, 2003, a protective order was issued prohibiting Defendant Michael Von Ferguson from having contact with a girlfriend he had lived with for twenty years. The protective order specifically required that Ferguson stay away from his girlfriend's place of employment, as well as other places she frequented. On March 18, 2003, Ferguson pled guilty to violating the protective order, a class A misdemeanor, and he was sentenced to 365 days in jail. The jail sentence was suspended in its entirety, and Ferguson was placed on probation. Ferguson was not represented by counsel when he entered his plea. Later that same month, Ferguson was spotted near his girlfriend's place of employment, in violation of the protective order.[1] On March 26, 2003, the State filed an information that alleged, in part, that

---

1. The circumstances surrounding the discovery that Ferguson had been near his girlfriend's place of employment in violation of the protective order are far from routine. A police officer was flagged down by two people who reported they had seen a man with a rifle in an area near the girlfriend's place of employment. When the officer reached the area, he noticed a man on the roof of a business located behind the girlfriend's place of employment. The officer approached the business and asked the man why he was up there. The man indicated that he was repairing a rain gutter. The officer sought to verify his response with the business's manager, who informed him that no repairs had been scheduled for the roof. The officer then went on to the roof, but the man had left by that time. However-

er, on the roof the officer did find a loaded rifle, wrapped in a jacket. Ferguson was linked to the jacket, and he later admitted to the police that he had indeed been on the roof. He explained, however, that he was merely up there looking for tools and other things people might "normally" leave on a roof. He also admitted to taking the rifle onto the roof, but claimed he did so only because he had been carrying the rifle with him on his bicycle, and when he had parked his bicycle to get on the roof he had no way of securing the rifle to the locked bicycle, thus logically necessitating that he take the rifle with him. Apparently he did not explain why one engaged in urban roof scavenging would need to be so heavily armed.

Ferguson had violated the protective order again.[2] This time the State charged Ferguson with a third degree felony based on his prior conviction for violation of the protective order. At the preliminary hearing, Ferguson objected to the use of the prior conviction to enhance the second violation to a third degree felony, arguing that an uncounseled plea could not be used to enhance a subsequent offense. The trial court overruled the objection and bound Ferguson over for trial on the third degree felony charge of violating the protective order.

¶3 Ferguson filed a motion to quash the bindover, renewing his argument that his prior, uncounseled misdemeanor conviction could not be used to enhance the subsequent offense, and he urged the court to strike the third degree felony enhancement. The trial court heard arguments on the issue and granted Ferguson's motion to quash the bindover on the enhancement of the protective order violation, leaving the charge as a class A misdemeanor rather than a third degree felony. The State petitioned this court for permission to appeal the trial court's interlocutory order. We granted the petition.

## ISSUES AND STANDARD OF REVIEW

■ ¶4 This appeal presents two issues. First, we are asked to review whether the trial court correctly concluded that Ferguson's prior misdemeanor conviction cannot be used to enhance his second violation of the protective order. The prior conviction resulted in a suspended jail term, and the conviction was based on an uncounseled guilty plea. Ferguson insists such a conviction will not support felony enhancement unless the prosecution presents evidence that the defendant knowingly and voluntarily waived his right to counsel. The State specifically asks this court to reverse the trial court's interpretation of United States Supreme Court precedent. Our review of a lower court's interpretation of case law presents a legal question that we review for

correctness. *See State v. Leyva*, 951 P.2d 738, 741 (Utah 1997).

■ ¶5 Second, the State asks this court to determine who rightfully bears the burden of proof on the question of whether a defendant knowingly or voluntarily waived his right to counsel in the prior plea proceeding. The trial court concluded the burden was on the State to present evidence that the Defendant knowingly and voluntarily waived his right to counsel. "Because the allocation of burdens of proof is a question of law," we grant no discretion to the trial court's allocation of the burden of proof and also review that determination for correctness. *Beaver County v. Utah State Tax Comm'n*, 916 P.2d 344, 357 (Utah 1996).

## ANALYSIS

I. Use of Prior Uncounseled Misdemeanor Convictions to Enhance a Subsequent Offense

■ ¶6 The State argues on appeal that under controlling United States Supreme Court precedent, a defendant's prior misdemeanor conviction may be used to enhance a subsequent criminal charge, even though the defendant may have been denied the Sixth Amendment right to counsel during the prior proceeding. Relying on the United States Supreme Court case of *Alabama v. Shelton*, 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002), the trial court disagreed with the State's position and held that because Ferguson did not have counsel when he entered a guilty plea the first time he violated the protective order, and because he received a suspended sentence of incarceration, the prior conviction could not be used to enhance the second violation of the protective order unless Ferguson knowingly and voluntarily waived his right to counsel. We agree with the trial court.

¶7 The Sixth Amendment to the United States Constitution provides that in "criminal prosecutions, the accused shall enjoy the

---

2. The protective order violation was the least of Ferguson's worries. We note that the information also alleged that Ferguson had committed attempted homicide, burglary, and theft of a firearm. Although Ferguson was not bound over for

trial on the burglary and theft charges, he still faces the attempted homicide charge, a second degree felony, the proceedings on which have been continued pending the outcome of this interlocutory appeal.

right to ... have the Assistance of counsel for his defence." U.S. Const. amend. VI. In *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court established that the Sixth Amendment right to counsel was applicable to the states, by virtue of the Fourteenth Amendment, and assured indigent defendants who are charged with crimes the fundamental right to have the assistance of counsel in order to ensure they receive a fair trial. *See id.* at 342–45, 83 S.Ct. 792.

¶ 8 *Shelton* is the third of a trio of United States Supreme Court cases that define this right to counsel as concerns indigent defendants who have been charged with misdemeanor offenses. In *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the United States Supreme Court first held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37, 92 S.Ct..2006. In *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), the Court drew the line for triggering the right to appointed counsel when an indigent defendant is charged with a misdemeanor crime at "actual imprisonment," effectively excluding from the scope of the right the defendant who is only fined and not sentenced to a term of imprisonment. *Id.* at 373–74, 99 S.Ct. 1158. Thus, prior to *Shelton,* the right to appointed counsel attached to the prosecution of a misdemeanor offense only if it led to actual imprisonment, even if only for a brief period of time.

¶ 9 In *Shelton,* the Court clarified that under its holdings in *Argersinger* and *Scott,* a defendant may not receive a suspended sentence of imprisonment "that may 'end up in the actual deprivation of a person's liberty' ... unless the defendant was accorded 'the guiding hand of counsel' in [defending against] the prosecution for the crime charged." *Shelton,* 535 U.S. at 658, 122 S.Ct. 1764 (quoting *Argersinger,* 407 U.S. at 40, 92 S.Ct. 2006). In other words, the Court determined in *Shelton* that even a suspended sentence constitutes a term of imprisonment within the meaning of *Argersinger* and *Scott,*

even if actual incarceration does not immediately follow the imposition of the sentence. *See id.*

¶ 10 Nevertheless, in *Shelton* the United States Supreme Court affirmed the Supreme Court of Alabama's decision to invalidate the part of the defendant's sentence imposing suspended jail time when the defendant's Sixth Amendment right had been violated, while at the same time affirming the defendant's underlying conviction and the remaining fine imposed as part of his sentence. *See id.* at 659–60, 122 S.Ct. 1764. The State makes much of the fact that the Supreme Court in *Shelton* did not reverse the defendant's conviction in its entirety, but only invalidated the suspended jail term as the remedy for the violation of the defendant's right to counsel. As a result, the State argues that the trial court in this case misread *Shelton.*

¶ 11 The State asserts that under *Shelton,* when a defendant is convicted of a misdemeanor based on an uncounseled guilty plea and the conviction results in a sentence of incarceration, whether suspended or imposed, the fact that the plea was uncounseled only results in the invalidation of the incarceration sentence but does not impact the underlying conviction itself. Thus, the State reasons, the conviction could still be used to enhance a subsequent offense. The State argues that *Shelton* stands for the broad proposition that a sentence imposing actual or suspended jail time for a misdemeanor will be invalidated if the defendant was not afforded the right to counsel or did not duly waive the right, but the conviction itself and any portion of the sentence imposing some penalty other than incarceration will remain valid. While we agree with the State that a proper remedy for the failure to provide counsel to an indigent defendant who has been sentenced to an actual or suspended jail term during the prosecution of the underlying misdemeanor includes vacating that portion of the sentence, we are not convinced that the State has accurately stated the law set forth in *Shelton* as it pertains to the general validity of the underlying conviction and whether it can be used to enhance the severity of a subsequent offense. On the

contrary, we are persuaded that *Shelton* did not directly address the issue now before us.

¶ 12 *Shelton* involved a direct appeal attacking the validity of an indigent defendant's uncounseled misdemeanor conviction and the resulting sentence and did not address the question of whether an uncounseled misdemeanor conviction could be used to enhance a criminal charge or penalty for a subsequent offense. *See id.* at 658, 122 S.Ct. 1764. Moreover, the situation the instant appeal presents is also distinguishable from the one in *Shelton* because the sentence Ferguson received for the prior misdemeanor conviction is fundamentally different from that handed down to the defendant in *Shelton.* In addition to the suspended jail time, the defendant's sentence in *Shelton* also included lesser penalties, like fines, that by themselves would not afford a defendant the right to counsel. *See id.* Thus, once the part of the sentence that afforded the defendant the right to counsel was removed, the defendant's underlying conviction could still rightly stand as concerns those parts of the sentence that would not otherwise trigger the right to counsel. Ferguson's sentence, however, did not include anything but the suspended one-year jail term and probation, leaving no independent, nonincarceration component of the sentence that can rationalize Ferguson's conviction.

¶ 13 Consequently, *Shelton* only directly answered the question of whether the imposition of a suspended jail sentence is the same as receiving a sentence of "actual imprisonment" for the sake of triggering a defendant's Sixth Amendment right to appointed counsel under *Argersinger* and *Scott.* Thus, *Shelton* does not directly speak to the issue before us as concerns the use of a prior uncounseled misdemeanor conviction to enhance a subsequent offense when the conviction was obtained in violation of the right to appointed counsel. *Shelton* only tells us that Ferguson had the right to counsel during the proceedings that resulted in the suspended term of incarceration for the prior misdemeanor offense. However, when we take *Shelton's* limited holding and place it within the framework established by United States Supreme Court precedent concerning the

propriety of using a conviction to enhance criminal charges or penalties when the conviction has been obtained in violation of a defendant's right to appointed counsel, we are further convinced that the State reads too much into *Shelton's* result.

¶ 14 The State cites *Nichols v. United States,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), as the leading case on using prior misdemeanor convictions to enhance later charges, contending that *Nichols* held "an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." *Id.* at 749, 114 S.Ct. 1921. The State reads *Nichols* to stand for the proposition that an otherwise valid misdemeanor conviction is also valid for purposes of enhancing a subsequent offense. The State relies on *Nichols* to argue that Ferguson's prior uncounseled misdemeanor conviction may still be used to enhance his second violation of the protective order because the underlying conviction is still valid according to the State's reading of *Shelton.* However, since we have rejected the State's reading of *Shelton,* the State's reliance on *Nichols* in this regard is flawed. Nevertheless, the rule the State cites from *Nichols* that "an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction," *id.,* still has application under our view of *Shelton.* Because *Shelton* holds that the imposition of a suspended jail term is the same as receiving a term of "actual imprisonment," as outlined in *Scott,* a violation of the right to counsel extended under *Shelton* is, therefore, on precisely the same footing as a violation of the right to counsel afforded by *Scott.*

¶ 15 Thus, *Shelton* supplements *Scott* as concerns the application of the right to counsel by giving an indigent defendant the right to counsel when the sentence imposed is a suspended term of imprisonment. As a result, after *Shelton,* the rule the State cites from *Nichols* might more appropriately be stated as holding that "an uncounseled misdemeanor conviction, valid under *Scott* [and *Shelton* ] because no [actual or suspended]

prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." *Id.* In other words, the rule from *Nichols* means that so long as an uncounseled misdemeanor conviction has not resulted in a sentence of imprisonment under *Scott* or *Shelton,* that conviction can otherwise be used for enhancement purposes because the defendant did not have the Sixth Amendment right to counsel in the first place. It follows, therefore, that an uncounseled misdemeanor conviction that results in an actual *or suspended* term of imprisonment, like the one at issue in this case, cannot be used for enhancement purposes under *Nichols,* absent a showing that the defendant waived the right to counsel.

¶ 16 Our conclusion is buttressed by other United States Supreme Court opinions that suggest the use of a prior uncounseled conviction is problematic when a defendant has been denied the right to counsel. While it is true that the United States Supreme Court "has never suggested that an uncounseled conviction is invalid for all purposes," *Lewis v. United States,* 445 U.S. 55, 66–67, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Court has recognized "that under the Sixth Amendment an uncounseled felony conviction cannot be used for certain purposes." *Id.* at 66, 100 S.Ct. 915. For example, in *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Court held that a conviction invalid under *Gideon v. Wainwright's* extension of the Sixth Amendment right to counsel to indigent criminal defendants could not be used for enhancement of punishment under a State's recidivist statute. *See id.* at 111, 114–16, 88 S.Ct. 258.

¶ 17 Similarly, in *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Court held that such a conviction could not be considered by a court in sentencing a defendant after a subsequent conviction. *See id.* at 449, 92 S.Ct. 589. Likewise, in *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), the Court disallowed the use of the conviction to impeach the general credibility of the defendant. *See id.* at 482, 92 S.Ct. 1014. Throughout its decisions, the Supreme Court has acknowledged that "there has been a theme that

failure to appoint counsel for an indigent defendant was a unique constitutional defect," *Custis v. United States,* 511 U.S. 485, 496, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), thus calling into question the propriety of using a conviction obtained in violation of constitutional protections for enhancing subsequent criminal charges and penalties.

¶ 18 The Utah Supreme Court has likewise acknowledged that the subsequent use of prior uncounseled convictions is questionable under United States Supreme Court precedent. *See State v. Triptow,* 770 P.2d 146, 147 (Utah 1989) (acknowledging "that unless counsel was knowingly waived, an uncounseled prior conviction may not be used in a later prosecution, 'either to support guilt or enhance punishment for another offense' ") (quoting *Burgett,* 389 U.S. at 115, 88 S.Ct. 258); *State v. Branch,* 743 P.2d 1187, 1192 (Utah 1987) (agreeing "that an involuntary guilty plea cannot be used to enhance or support a subsequent conviction"); *State v. Saunders,* 699 P.2d 738, 743 (Utah 1985) (holding that requirements of *Burgett* were satisfied because defendant was represented by attorney when he entered guilty plea).

¶ 19 As a result, we fail to see how the mere affirmance of the defendant's underlying conviction in *Shelton* can be read to overrule the United States Supreme Court's long-standing prohibitions against the use of uncounseled convictions for certain purposes when the convictions have been obtained in violation of the Sixth Amendment right to counsel. Consequently, we agree with the trial court that, under *Shelton,* an indigent defendant facing a misdemeanor charge is entitled to counsel when a suspended jail sentence is imposed and that a conviction achieved in violation of this right to counsel cannot be used to support guilt or enhance punishment for another offense unless the right to counsel was knowingly waived. We turn now to the waiver issue.

II. Waiver of the Right to Counsel

¶ 20 In concluding that Ferguson's prior misdemeanor conviction could not be used to enhance any subsequent charges he faced without a showing that he had waived his right to counsel, the trial court also conclud-

ed that the burden was on the State to present evidence that Ferguson knowingly and voluntarily waived his right to counsel. We disagree with this aspect of the trial court's conclusion.

¶ 21 In *State v. Triptow*, 770 P.2d 146 (Utah 1989), the Utah Supreme Court considered "the question of who bears the burden of proof on the issue of representation or waiver of counsel in prior proceedings leading to a conviction that is used to increase the penalty in a subsequent prosecution." *Id.* at 148. In *Triptow*, the Court also determined the degree to which a "presumption of regularity ... attends any judgment which has not been appealed from." *Id.* In doing so, the Court reviewed the approach taken by a number of states to consider the question of who bears the burden of proof on the issue of representation and waiver of counsel. *See id.* The Court decided to follow the lead of several states that

> acknowledge the presumption of regularity but allow the defendant to rebut that presumption by merely raising the issue and producing some evidence that counsel was not present and was not waived. This is enough to shift the burden to the state to affirmatively prove either representation or waiver by at least a preponderance of the evidence.

*Id.* The Court reasoned that because "the defendant is the one best situated to know whether his or her sixth amendment right was infringed in the earlier proceedings ... it is appropriate to presume that the right to counsel has been observed unless the defendant affirmatively contends to the contrary." *Id.* at 149. Where the defendant does not present any evidence of irregularities in a prior proceeding, a court may properly presume that a defendant's prior convictions occurred while he was represented by counsel or that he knowingly waived counsel. *See State v. Williams,* 773 P.2d 1368, 1373–74 (Utah 1989); *State v. Pooler,* 2002 UT App 299, ¶ 7, 56 P.3d 979.

¶ 22 Ferguson contends, however, that the presumption of regularity should not attach to his prior conviction because it is obvious from the face of the judgment of conviction itself that he did not have the benefit of counsel and because the judgment of conviction is also silent on whether he waived his right to counsel. Indeed, the certified copy of his prior conviction indicates that Ferguson appeared pro se and is also void of any reference to whether Ferguson was advised of or waived his right to counsel. Ferguson argues that where the conviction clearly shows that a defendant was not represented by counsel and where the record is silent on whether the defendant waived his right to counsel, the presumption of regularity does not attach and, thus, the burden remains on the State.

¶ 23 Ferguson supports this argument by asserting that *Triptow*, when read together with *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), stands for the proposition that a presumption of regularity attaches to a conviction only when there is no indication on the face of the conviction that a defendant was not represented by counsel. While it is true that in *Burgett* the United States Supreme Court held that a prior conviction could not be used for sentencing enhancement because the record of the earlier proceedings did not show that the defendant had waived his right to counsel, *see id.* at 114–15, 88 S.Ct. 258, the Supreme Court has subsequently distinguished *Burgett* in a way that directly responds to Ferguson's arguments. *See Parke v. Raley,* 506 U.S. 20, 29–31, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).

¶ 24 In *Parke*, the Supreme Court was asked to determine if Kentucky's allocation of the burdens of proof, when examining a prior conviction's validity, was constitutionally sound. *See id.* at 22–23, 113 S.Ct. 517. Similar to Utah's burden of proof allocation under *Triptow*, in *Parke* the Kentucky court required the prosecution to first prove the existence of the judgment of conviction on which it intended to rely. Once that was proven, a presumption of regularity attached, and the burden was shifted to the defendant to produce some evidence that his rights were infringed. *See id.* at 24, 113 S.Ct. 517. If the defendant could undercut the presumption of regularity, then the burden shifted back to the prosecution to show that the judgment was entered in such a way that it

did not violate the defendant's rights. *See id.*

¶ 25 In *Parke,* the defendant challenged the use of two prior convictions to charge him under Kentucky law as a "persistent felony offender" on the ground that the convictions were invalid under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), because the records of the convictions failed to affirmatively show that his guilty pleas were knowing and voluntary. *Parke,* 506 U.S. at 22–23, 113 S.Ct. 517. *See Boykin,* 395 U.S. at 242, 89 S.Ct. 1709 (holding trial court erred in accepting a defendant's guilty plea without a record affirmatively showing that the plea was knowing and voluntary). The defendant in *Parke* also argued that the trial court had erroneously given the two prior convictions a presumption of regularity because *Burgett* "stands for the proposition that every previous conviction used to enhance punishment is 'presumptively void' if waiver of a claimed constitutional right does not appear from the face of the record." *Parke,* 506 U.S. at 31, 113 S.Ct. 517 (citation omitted).

¶ 26 The Supreme Court rejected the defendant's argument that *Boykin's* presumption that a conviction is invalid applies equally to a defendant's collateral attack on his previous convictions when it is claimed the defendant's guilty pleas were taken without any record affirmatively showing the pleas were knowing and voluntary. *See id.* at 30, 113 S.Ct. 517. The Court instead determined that when a conviction was challenged on collateral review, the " 'presumption of regularity' that attaches to final judgments," which is "deeply rooted in our jurisprudence," could not be ignored "even when the question is waiver of constitutional rights." *Parke,* 506 U.S. at 29, 113 S.Ct. 517. Thus, the Court in *Parke* found "no good reason to suspend the presumption of regularity" since the case was not one "in which an extant transcript [was] suspiciously 'silent' on the question whether the defendant waived con-

stitutional rights," but rather was one in which "no transcripts or other records of the earlier plea colloquies exist[ed] at all." *Id.* at 30, 113 S.Ct. 517. In fact, the Court stated that "it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights." *Id.* The Court also did not read *Burgett* to stand for the broad proposition that the defendant asserted it did, especially in light of the fact that the prior conviction at issue in *Burgett* had been entered at a time when a "state criminal defendant['s] federal constitutional right to counsel had not yet been recognized, and so it was reasonable to presume that the defendant had not waived a right he did not possess." *Id.* at 31, 113 S.Ct. 517.

¶ 27 Thus, in *Parke,* the Court concluded that just because a record was unavailable, its unavailability alone could not be used to show noncompliance with well-established constitutional requirements.[3] *See id.* As a result, we see Ferguson's reliance on *Burgett* as misplaced and are otherwise persuaded by the Court's holding in *Parke,* combined with the Utah Supreme Court's holding in *Triptow,* that even though the certified copy of Ferguson's conviction is silent about his waiver of counsel, or whether he was informed of his rights, the presumption of regularity still attaches and the initial burden is on Ferguson to adduce some evidence that he did not knowingly waive his right to counsel.

¶ 28 Ferguson argues that even if he bears the burden of producing "some evidence that he ... was not represented by counsel and did not knowingly waive counsel," *Triptow,* 770 P.2d at 149, his burden has been met because the certified copy of his prior conviction indicates on its face that Ferguson appeared pro se and because it is also devoid of any reference to whether Ferguson was advised of, or waived, his right to counsel. Ferguson relies on *In re Smith,* 925 P.2d 169

---

**3.** The instant case is on a different footing in that this is not a case where there is no transcript of the plea hearing on the earlier charge. Rather, neither side has seen fit to secure a copy of the transcript before now, each arguing that the other side has the initial burden and, absent some

showing to the contrary, that he or it is entitled to prevail. Presumably the parties will now have an incentive to secure the transcript and learn what actually happened concerning any waiver of Ferguson's right to counsel.

(Utah 1996), to suggest that by pointing out that on the certified copy of his conviction he appeared pro se, Ferguson has presented the same type of evidence the defendant in *Smith* presented to rebut the presumption of regularity. However, a closer reading of *Smith* reveals that the defendant in *Smith* produced more evidence to rebut the presumption of regularity than just a copy of a judgment of conviction.

¶ 29 In *Smith*, the defendant presented enough of a record of the proceedings, in which he claimed he was denied the right to counsel, to allow the reviewing court to see whether he was represented by counsel or whether he had knowingly waived counsel. *See id.* at 172–73. It was because of that type of evidence that the reviewing court was able to say he had successfully rebutted the presumption of regularity, thereby shifting the burden back to the prosecution.[4] *See id.*

¶ 30 In *State v. Gutierrez*, 2003 UT App 95, 68 P.3d 1035, this court addressed the issue of what type of evidence will be sufficient to meet the defendant's burden to produce "some evidence" in order to rebut the presumption of regularity as established in *Triptow*. In *Gutierrez*, the defendant challenged the use of two prior DUI convictions for enhancement purposes, arguing that the guilty pleas that were the basis of the convictions were not voluntary. *See id.* at ¶ 5. This court reiterated the Utah Supreme Court's holding in *Triptow* that

> once the State has proven a prior conviction, a presumption of regularity arises, and the burden shifts to the defendant to produce "some evidence" of involuntariness. Upon the showing of some evidence of involuntariness, the burden shifts back to the State to prove voluntariness by a preponderance of the evidence.

*Id.* at ¶ 7 (quoting *Triptow*, 770 P.2d at 149). The defendant in *Gutierrez* produced no evidence of involuntariness on one conviction, *see* 2003 UT App 95 at ¶ 8, 68 P.3d 1035, and to challenge the other conviction the defendant produced an affidavit, which he claimed sufficiently rebutted the presumption of regularity as it applied to that conviction. *See id.* at ¶ 9. This court concluded that a "self-serving affidavit" was insufficient, *see id.* at ¶ 10, and that the "defendant must demonstrate the involuntariness of his plea by some evidentiary method other than his own bare assertions." *Id.* at ¶ 12. Thus, this court noted in *Gutierrez* "that a defendant seeking to rebut the presumption of regularity must produce a transcript, testimony regarding taking of the plea, a docket sheet, or other affirmative evidence" in order to effectively rebut the presumption. *Id.* at ¶ 11.

¶ 31 Although the certified copy of the conviction in this case indicates that Ferguson appeared pro se in the prior proceeding, which surely dispels any suggestion that he was represented by counsel, the fact that the written judgment of conviction is silent on the issue of whether Ferguson was informed about or waived his right to counsel does not rebut the presumption of regularity that attaches to his conviction, including the presumption that he was in fact informed of his right to counsel and voluntarily waived it. Indeed, the detailed recitations required in this regard are usually to be found in a transcript of the plea colloquy and/or an affidavit submitted at the time of the plea, and are not typically included on the face of the judgment of conviction. The burden thus remains on Ferguson to produce some evidence to put in question whether he was adequately advised of and actually waived his constitutional right to counsel in the prior

---

4. We also note that *In re Smith*, 925 P.2d 169 (Utah 1996), concerned a different type of scenario than this case presents. *Smith* involved the disciplinary action of a Utah-licensed attorney who had been convicted in Wisconsin of theft by fraud and false swearing. *See id.* at 170. In order to prevent his Wisconsin convictions from being used as the basis for disciplinary action in Utah, the attorney argued that he was denied his right to counsel in his Wisconsin criminal trial and, as a result, his convictions were void and ineligible for full faith and credit in Utah. *See id.* at 172. Consequently the Utah Supreme Court's review focused mainly on whether the attorney's right to counsel had been fully and fairly litigated in the Wisconsin courts. *See id.* at 173. The Utah Supreme Court, after examining the records of the Wisconsin proceedings, was satisfied that, under *Triptow's* burden of proof allocation scheme, each party had met its burden of proof and that the Wisconsin court's conclusion that the attorney had knowingly waived his right to counsel had been fully and fairly litigated. *See id.* at 172–73.

proceeding. If Ferguson introduces a transcript, testimony from those who were present during the prior proceeding, or some other form of affirmative evidence that tends to refute the presumption that he was informed of his right to counsel, or that he knowingly and voluntarily waived it, he will successfully shift the burden to the State to prove affirmatively, by a preponderance of the evidence, Ferguson's valid waiver of the right to counsel.

## CONCLUSION

¶ 32 We agree with the trial court's conclusion that under *Alabama v. Shelton,* 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002), a defendant facing a misdemeanor charge is entitled to counsel when a term of incarceration is imposed, regardless of whether the term of incarceration is suspended or actually served. We also affirm the trial court's conclusion that under *Shelton,* Ferguson's prior uncounseled misdemeanor conviction, which resulted in a suspended one-year term of imprisonment, cannot be used to enhance his second violation of the protective order to a third degree felony *unless* Ferguson knowingly and voluntarily waived his right to counsel. Nevertheless, we reverse the trial court's decision with regard to which party bears the burden of proof on the question of whether Ferguson waived his right to counsel in the prior proceeding. We remand for further proceedings in accordance with this opinion so that it may be properly ascertained whether Ferguson validly waived his right to counsel.

¶ 33 WE CONCUR: PAMELA T. GREENWOOD and NORMAN H. JACKSON, Judges.