2007 UT 1

STATE of Utah, Plaintiff, Petitioner, and Cross–Respondent,

v.

Michael VON FERGUSON, Defendant, Respondent, and Cross–Petitioner.

No. 20050376.

Supreme Court of Utah.

Jan. 9, 2007.

Mark L. Shurtleff, Att'y Gen., J. Frederic Voros, Jr., Asst. Att'y Gen., B. Kent Morgan, Alicia H. Cook, Salt Lake City, for plaintiff.

Joan C. Watt, Debra Meek Nelson, Vernice S. Trease, Salt Lake City, for defendant.

PARRISH, Justice:

¶ 1 The State charged Michael Von Ferguson with violating a protective order, attempted murder, and related offenses. The protective order charge was enhanced to a felony because Ferguson had previously been convicted of that same charge.[1] A magistrate bound Ferguson over for trial, but the district court reduced the protective order charge to a misdemeanor after concluding that Ferguson's prior conviction had been entered in violation of his Sixth Amendment right to counsel. In doing so, the district court held that the State bore the burden of establishing the validity of Ferguson's prior conviction. On interlocutory appeal, the court of appeals affirmed in part and reversed in part.[2] It agreed that Ferguson's prior conviction could not be used to enhance the subsequent charge if it was obtained in violation of his constitutional right to coun-

---

1. *See* Utah Code Ann. § 77–36–1.1 (2003).

2. *State v. Ferguson,* 2005 UT App 144, ¶ 1, 111 P.3d 820.

sel.[3] It recognized, however, that the prior conviction enjoyed a presumption of regularity and concluded that Ferguson had the burden of producing at least some affirmative evidence that the conviction was constitutionally infirm.[4]

¶ 2 We granted the State's petition for certiorari to determine whether an uncounseled misdemeanor conviction that imposes a suspended sentence in violation of a defendant's right to counsel under *Alabama v. Shelton*[5] can be used to enhance a subsequent criminal charge. We also granted Ferguson's cross-petition, which asks us to determine who bears the burden of establishing the constitutional validity of the prior conviction. For the reasons detailed below, we affirm the court of appeals on both issues, but clarify the type of evidence on which Ferguson may rely in challenging the validity of his prior conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 Michael Von Ferguson lived with Julia Jepson for twenty years. Jepson alleged that Ferguson abused her and her daughter during that time. On January 8, 2003, Jepson obtained a protective order that prohibited Ferguson from going near, contacting, or harassing her. It also specifically required Ferguson to stay away from Brickyard Kennel, Jepson's place of employment. Ferguson violated the protective order by calling and threatening Jepson multiple times.

¶ 4 On March 18, 2003, Ferguson pled guilty to violating the protective order and was sentenced to one year in jail. The sentence was suspended, and Ferguson was placed on probation. Ferguson was not represented by counsel during these proceedings.

¶ 5 Six days later, police officer R.K. Sullivan investigated a report of a man with a rifle on the roof of a Media Play building located behind Brickyard Kennel. When Sullivan confronted the man, he claimed to be repairing the rain gutter. After speaking with the Media Play manager and learning that no such repair had been scheduled, Sullivan went to the roof. The man was gone, but he had left behind the rifle wrapped in a jacket.

¶ 6 At noon that day, after noticing a significant amount of police and media traffic near the Brickyard Kennel, Jepson turned on the news and learned of a "sniper" on the Media Play roof. She recognized the description as one that matched Ferguson's and immediately called police. She later identified the jacket found on the roof as belonging to Ferguson.

¶ 7 Police apprehended Ferguson, who admitted to being on the roof on the day in question. Ferguson acknowledged that he should not have been in the area but explained that he was on the roof looking for "tools and things people might leave [there]." He explained that it was necessary for him to carry the rifle to the roof because he had been transporting it on his bike and had no way to lock it up while conducting his rooftop activities.

¶ 8 The State charged Ferguson with, inter alia, violating a protective order and sought to enhance that charge from a class A misdemeanor to a third degree felony based on Ferguson's prior conviction for the same charge. At the preliminary hearing, the State introduced a certified copy of Ferguson's March 18, 2003 conviction for violating the protective order. Ferguson objected, alleging that the conviction had been obtained in violation of his constitutional rights because, on its face, it showed that he had not been represented by counsel. The magistrate denied Ferguson's objection and bound him over on charges of felony violation of a protective order and attempted homicide. Ferguson moved to quash the bindover, arguing that "his prior uncounseled misdemeanor conviction could not be used to enhance the protective order charge to a third degree felony." The State opposed the motion, contending that the prior conviction was valid because Ferguson had no right to coun-

---

3. *Id.* ¶ 19.

4. *Id.* ¶ 32.

5. 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002).

sel for a misdemeanor charge for which he served no jail time.

¶ 9 The district court reduced the protective order charge to a misdemeanor, reasoning that *Alabama v. Shelton* did not permit the State to use Ferguson's prior uncounseled conviction to enhance the subsequent charge unless Ferguson had knowingly and voluntarily waived his right to counsel. It further held that the State had the burden of establishing such a waiver.

¶ 10 On interlocutory appeal, the court of appeals agreed with the district court that the State could not enhance the protective order charge on the basis of a prior conviction obtained in violation of a defendant's right to counsel.[6] But it reversed the district court's holding that the State bore the burden of establishing the constitutional validity of the uncounseled conviction.[7] Recognizing the presumption of regularity that attached to the conviction, it held that Ferguson had the burden of producing at least some affirmative evidence to rebut that presumption.[8] It therefore remanded the case for a factual determination as to whether Ferguson had waived his right to counsel on the prior conviction.

¶ 11 We granted certiorari on both issues and have jurisdiction pursuant to Utah Code section 78-2-2(3)(a). On certiorari, we review the decision of the court of appeals, not that of the district court.[9] "We conduct that review for correctness, ceding no deference to the court of appeals."[10]

## ANALYSIS

¶ 12 We begin by considering whether Ferguson's uncounseled misdemeanor conviction, for which Ferguson received a suspended jail sentence, may be used to enhance his subsequent criminal charge. We affirm the court of appeals and conclude that it may not be used unless Ferguson knowingly waived his right to counsel.

¶ 13 We also agree with the court of appeals that Ferguson has the burden of producing at least some evidence to rebut the presumption of regularity attaching to his prior conviction, but we clarify the type of evidence that satisfies this burden. The State produced a certified copy of the prior conviction, which is entitled to a presumption of regularity. Ferguson may rebut this presumption, however, by offering minimal evidence that the conviction was obtained in violation of his right to counsel. If he does so, the burden of establishing the validity of the conviction shifts back to the State. Accordingly, we remand this matter for a factual determination regarding the validity of the prior conviction.

## I. A MISDEMEANOR CONVICTION OBTAINED IN VIOLATION OF THE SIXTH AMENDMENT IS INVALID

¶ 14 The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense."[11] The United States Supreme Court has construed the Sixth Amendment to require that counsel be "provided for defendants unable to employ counsel unless the right is competently and intelligently waived."[12] In *Gideon v. Wainwright*, the Court specifically held that the right to counsel is a fundamental right that applies to state criminal proceedings through the Due Process Clause of the Fourteenth Amendment.[13]

¶ 15 It is a bedrock principle of American jurisprudence that the Sixth

---

6. *Ferguson*, 2005 UT App 144, ¶ 19, 111 P.3d 820.

7. *Id.* ¶ 20.

8. *Id.* ¶ 31.

9. *State v. Warren*, 2003 UT 36, ¶ 12, 78 P.3d 590.

10. *State v. Brake*, 2004 UT 95, ¶ 11, 103 P.3d 699 (citation omitted).

11. U.S. Const. amend. VI.

12. *Gideon v. Wainwright*, 372 U.S. 335, 340, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

13. *Gideon*, 372 U.S. at 340-45, 83 S.Ct. 792.

Amendment right to appointed counsel attaches when an indigent defendant is charged with a felony. But unlike those charged with a felony, indigent defendants in misdemeanor cases do not necessarily enjoy the right to appointed counsel. Three United States Supreme court cases, *Argersinger v. Hamlin,*[14] *Scott v. Illinois,*[15] and *Alabama v. Shelton,*[16] have explained that the right to appointed counsel attaches in misdemeanor cases only if the defendant actually has been imprisoned or received a suspended sentence. We examine each of these cases in turn.

¶ 16 In *Argersinger,* the Court held that indigent defendants were entitled to counsel in misdemeanor cases that resulted in less than six months' imprisonment.[17] It reasoned that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."[18]

¶ 17 The Court clarified the *Argersinger* rule a few years later in *Scott,*[19] explaining that the Sixth Amendment "require[s] only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense."[20] It reasoned that the right to counsel in misdemeanor cases is implicated only when the trial leads to "actual imprisonment" of the defendant because "actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment."[21] Under *Scott,* sentences of fines or other punishments for uncounseled misdemeanor convictions are constitutionally permissible so long as no *actual* imprisonment is imposed.[22] If a defendant is actually imprisoned, then the Sixth Amendment attaches, and the defendant must have either received or intelligently waived his right to counsel.[23]

¶ 18 More than two decades later, in *Shelton,* the Court expanded the scope of the actual imprisonment standard, holding that the Sixth Amendment also attaches when a defendant receives a suspended sentence of imprisonment.[24] In *Shelton,* an Alabama district court levied a suspended jail sentence in addition to a fine for a misdemeanor violation.[25] The defendant appealed, claiming a violation of his Sixth Amendment right to counsel.[26] The Alabama Supreme Court agreed with the defendant and invalidated the portion of the sentence imposing jail time.[27] On certiorari, the United States Supreme Court addressed "whether the Sixth Amendment right to appointed counsel ... applies to a defendant" who receives a suspended jail sentence.[28] The Court answered the question in the affirmative, reasoning that the defendant was entitled to counsel because even a suspended sentence could potentially " 'end up in the actual deprivation of a person's liberty.' "[29] Accordingly, the suspended sentence fell within the "actual imprisonment" standard articulated by *Scott* and was infirm for failing to comply with the Sixth Amendment.[30]

**14.** 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

**15.** 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).

**16.** 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002).

**17.** 407 U.S. at 26, 30–31, 92 S.Ct. 2006.

**18.** *Id.* at 37, 92 S.Ct. 2006.

**19.** 440 U.S. at 368, 99 S.Ct. 1158.

**20.** *Id.* at 374, 99 S.Ct. 1158.

**21.** *Id.* at 373, 99 S.Ct. 1158.

**22.** *Id.* at 373–74, 99 S.Ct. 1158.

**23.** *See id.*

**24.** 535 U.S. 654, 658, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002).

**25.** *Id.*

**26.** *Id.* at 658, 122 S.Ct. 1764.

**27.** *Id.* at 659–60, 122 S.Ct. 1764.

**28.** *Id.* at 658, 122 S.Ct. 1764.

**29.** *Id.* (quoting *Argersinger,* 407 U.S. at 40, 92 S.Ct. 2006).

**30.** *Shelton,* 535 U.S. at 662, 122 S.Ct. 1764.

¶ 19 While the *Shelton* opinion affirmed the decision of the Alabama Supreme Court, which had invalidated the incarceration portion of Shelton's sentence, the Court did not explicitly address the validity of Shelton's underlying conviction. In the present case, the State latches onto this ambiguity, arguing that the underlying conviction remained valid and could be used to enhance subsequent charges. We therefore examine *Shelton* and other United States Supreme Court precedent further. We agree with the court of appeals that "the State reads too much into *Shelton's* result."[31] Both the procedural history and the plain language of the *Shelton* opinion suggest that a conviction obtained in violation of the Sixth Amendment is invalid for all purposes and therefore cannot be used to enhance a subsequent criminal charge.

¶ 20 The Supreme Court's affirmance in *Shelton* is an indication of its agreement with the Alabama court's ruling that the suspended sentence gave rise to a Sixth Amendment violation. Because the issue was not before it, however, the Supreme Court did not address the validity of the underlying conviction and the nonincarceration components of Shelton's sentence.[32]

¶ 21 While the Supreme Court did not explicitly address the constitutionality of the specific remedy ordered by the Alabama court, it nevertheless implied that a conviction obtained in violation of the Sixth Amendment, not merely the offending sentence, would be constitutionally infirm. It repeatedly described the Sixth Amendment as protecting against invalid convictions, not merely invalid sentences.[33] The Court reiterated that the Sixth Amendment protects against invalid convictions by stressing that a defendant cannot be "jailed absent a *convic-*

*tion* credited as reliable."[34] It also indicated that a "defendant ha[s] a recognized right to counsel when *adjudicated* guilty,"[35] emphasizing that the Sixth Amendment right applies to the conviction itself, not only to the sentence. Nowhere did the Court indicate that an offending sentence could be severed from an invalid conviction, somehow resurrecting the conviction's validity as the State suggests here.

¶ 22 Other United States Supreme Court precedent similarly implies that a conviction obtained in violation of the Sixth Amendment is invalid and therefore cannot be used to enhance a subsequent sentence. For example, in *Nichols v. United States*, which was decided before *Shelton*, a defendant's sentence was enhanced from 210 to 235 months as a result of a prior uncounseled misdemeanor conviction.[36] As punishment for this misdemeanor conviction, the defendant was fined but not incarcerated.[37] The Court upheld the sentencing enhancement, holding that "an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction."[38] It reasoned that such enhancements were permissible because the Sixth Amendment did not attach to nonincarceration convictions.[39]

¶ 23 The State reads *Nichols* as holding that any valid misdemeanor conviction can be used to enhance a subsequent sentence. While we do not disagree with this proposition, we emphasize that it is the underlying *conviction* that must be valid. An uncounseled misdemeanor conviction imposing a sentence of incarceration, either actual or suspended, is not valid. Therefore, a conviction obtained in violation of *Scott* or *Shel-*

---

**31.** *State v. Ferguson*, 2005 UT App 144, ¶ 13, 111 P.3d 820.

**32.** *See Shelton*, 535 U.S. at 673–74, 122 S.Ct. 1764.

**33.** *Id.* at 662, 122 S.Ct. 1764 ("A suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense.").

**34.** *Id.* at 665, 122 S.Ct. 1764 (emphasis added).

**35.** *Id.* at 664, 122 S.Ct. 1764 (emphasis added).

**36.** 511 U.S. 738, 740–41, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994).

**37.** *Id.*

**38.** *Id.* at 749, 114 S.Ct. 1921.

**39.** *Id.* at 746–47, 114 S.Ct. 1921.

*ton* cannot be used for enhancement purposes.

¶ 24 This result is consistent with the reasoning and language of Supreme Court precedent regarding the right to counsel generally. In *Gideon v. Wainwright,* the Court reasoned that because the right to counsel is so "fundamental and essential to fair trials," it was required to reverse the indigent defendant's uncounseled conviction.[40] Similarly, in *Burgett v. Texas,* the Court held that it would be impermissible for courts "[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment."[41] And in *United States v. Tucker,* the Court held that a sentencing court could not consider a defendant's previous uncounseled conviction because doing so would "erode the principle of [*Gideon v. Wainwright* ]."[42]

¶ 25 The State attempts to distinguish these cases by pointing out that they all involve felonies. It acknowledges that a violation of a defendant's right to counsel in a felony proceeding invalidates the underlying conviction. Nevertheless, the State maintains that "[b]ecause the right to counsel in misdemeanor prosecutions depends on the imposition of jail time, violation of that right requires invalidating only the jail time."

¶ 26 We fail to see the basis for the alleged distinction. Although these cases involved felonies, the United States Supreme Court has specifically held that "their rationale has relevance to any criminal trial ...

where an accused is deprived of his right to liberty."[43] The ideas about the fundamental right to counsel articulated in these cases are applicable to all criminal prosecutions involving the deprivation of liberty.[44] We are therefore convinced that the validity of an uncounseled criminal conviction is not contingent on whether the offense is classified as a misdemeanor or a felony, but rather on whether the Sixth Amendment attaches. If a conviction is obtained in violation of a defendant's Sixth Amendment right to counsel, then the conviction, not merely the offending sentence, is invalid and may not provide the basis for enhancing a subsequent criminal charge.[45]

¶ 27 In sum, under *Shelton,* the Sixth Amendment attached to Ferguson's prior conviction when he received a one-year suspended sentence. He consequently had the right to be represented by counsel. Because he was not, Ferguson's conviction is invalid and cannot be used to enhance the subsequent criminal charge unless he waived his right to counsel.[46]

¶ 28 Before moving to the second issue presented for our review, we pause to clarify the practical result of our ruling. The Supreme Court's analytic approach to the right to counsel, as reflected in the *Scott* and *Shelton* opinions, often creates a practical dilemma. This is so because a defendant's right to counsel in a misdemeanor case is dependent upon the sentence he receives. Before sentencing, the court does not know whether an uncounseled conviction will be valid under *Scott* because no prison time will be imposed

40. 372 U.S. 335, 336, 344–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

41. 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

42. 404 U.S. 443, 449, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (citation omitted), *superseded on other grounds by statute; see also Loper v. Beto,* 405 U.S. 473, 483, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) ("[T]he use of convictions constitutionally invalid under *Gideon v. Wainwright* to impeach a defendant's credibility deprives him of due process of law."); *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid convic-

tion and sentence depriving him of his life or his liberty.").

43. *Argersinger,* 407 U.S. at 32, 92 S.Ct. 2006.

44. *Id.* at 32–33, 92 S.Ct. 2006.

45. Cf. *Lewis v. United States,* 445 U.S. 55, 66–67, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (holding that an uncounseled felony conviction may form the basis for imposing a civil firearms disability under federal firearms statute because Congress could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm).

46. *See* discussion *infra* Part II.

or whether it will be invalid under *Shelton* because the defendant will receive jail time or a suspended sentence. It is therefore difficult for courts to determine when to appoint counsel for an indigent defendant charged with a misdemeanor.

¶ 29 To avoid the risk of invalidating a conviction in misdemeanor cases, we emphasize that the courts of this state may not impose incarceration-based sentences in cases where an indigent defendant has neither received nor intelligently waived the right to counsel. As a result, in those misdemeanor cases where the court elects not to appoint counsel, it restricts its sentencing options accordingly.

## II. WAIVER OF THE RIGHT TO COUNSEL

¶ 30 Having concluded that Ferguson's prior conviction cannot be used to enhance his subsequent charge unless he waived his right to counsel, we must now determine whether Ferguson did so. This requires us to assess which party bears the burden of establishing the validity of the underlying conviction.

¶ 31 Ferguson contends that the State had the burden of establishing a constitutionally adequate waiver of counsel because the judgment of the prior conviction reflects that he was not represented by counsel. Although Utah courts generally recognize a presumption of regularity when the State introduces a prior conviction for enhancement purposes, Ferguson argues that this presumption does not attach to a judgment that shows on its face that the defendant was not represented by counsel. In contrast, the State contends that even judgments based on uncounseled convictions enjoy a presumption of regularity, thereby shifting to Ferguson the burden of coming forward with evidence to establish that he did not knowingly waive his right to counsel.

¶ 32 We agree with the State. Even those judgments based on uncounseled convictions are entitled to a presumption of regularity. In such cases, however, the presumption may be rebutted by the defendant's own testimony. The burden then shifts to the State to establish the validity of the conviction.

### A. Previous Convictions Are Entitled to a Presumption of Regularity

¶ 33 In *State v. Triptow*, we articulated a framework for analyzing the validity of an underlying conviction in the context of a charging enhancement.[47] In *Triptow*, a defendant whose sentence had been enhanced under a habitual criminal statute appealed the enhancement, arguing that the state had the burden of proving that he was represented by counsel on the charge giving rise to the enhancement.[48] We disagreed, reasoning:

> A previous judgment of conviction so proven is entitled to a presumption of regularity, including a presumption that the defendant was represented by counsel. This presumption satisfies any initial burden the State may have of proving that the defendant had or knowingly waived counsel. After proof of the previous conviction is introduced, the burden is on the defendant to raise the issue and produce some evidence that he or she was not represented by counsel and did not knowingly waive counsel. Once the defendant has presented some evidence, the presumption of regularity is rebutted and the burden shifts to the State to prove by a preponderance of the evidence that the defendant was in fact represented or knowingly waived representation.[49]

¶ 34 Under this test, the State may satisfy its initial burden of establishing the validity of the conviction by producing a certified copy of the conviction. But Ferguson contends that the *Triptow* presumption of regularity does not attach to the underlying conviction in this case because that conviction reflects that he was not represented by counsel. In so arguing, Ferguson relies on the United States Supreme Court case of *Bur-*

47. 770 P.2d 146 (Utah 1989).

48. *Id.* at 146.

49. *Id.* at 149.

*gett v. Texas.*[50] In *Burgett,* the Court held that because "the judgment on its face showed that petitioner was not represented by counsel," it was "constitutionally infirm under the standards of *Gideon v. Wainwright*" and could not "be used against a person either to support guilt or enhance punishment for another offense."[51]

¶ 35 In *Parke v. Raley,*[52] however, the United States Supreme Court "distinguished *Burgett* in a way that directly responds to Ferguson's arguments."[53] In *Parke,* the Court upheld the constitutionality of a Kentucky burden-shifting scheme similar to that adjudicated by this court in *Triptow.* The Kentucky scheme accorded judgments a presumption of regularity but allowed defendants to rebut that presumption.[54] The Court reasoned that Kentucky's burden-shifting rule did not violate due process because "even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant."[55] *Parke* specifically cites *Triptow* in support of the proposition that "allocating some burden to the defendant is [not] fundamentally unfair."[56]

¶ 36 *Parke* also limited *Burgett,* reasoning that *Burgett* was premised on outdated assumptions.[57] When Burgett's prior conviction was entered, "state criminal defendants' federal constitutional right to counsel had not yet been recognized, . . . so it was reasonable to presume that [Burgett] had not waived a right he did not possess."[58] Such a presumption is no longer accurate because courts are assumed to have complied with well-established requirements ensuring that any waiver of the right to counsel is made knowingly and intelligently.[59] Accordingly, *Burgett* can no longer be read to "stand[ ] for the proposition that every previous conviction used to enhance punishment is 'presumptively void' if waiver of a claimed constitutional right does not appear from the face of the record."[60]

¶ 37 In arguing that his prior conviction is not entitled to a presumption of regularity, Ferguson also relies on language from our decision in *Lucero v. Kennard.*[61] There, we indicated that because of the "special status" of right-to-counsel claims, "[a] court may not presume waiver of the right to counsel unless there is some evidence that the defendant affirmatively acquiesced to the waiver."[62] Relying on this language, Ferguson argues that even if a judgment generally enjoys a presumption of regularity, waiver of counsel cannot be presumed. But neither *Lucero* nor the cases that it cites stand for such a proposition. *Lucero* cites *Carnley v. Cochran*[63] and *State v. Hamilton,*[64] but neither of these cases states that a waiver of counsel cannot be presumed. Rather, they hold only that it is impermissible to presume a waiver of counsel where a trial record is silent on the issue of waiver.[65] Neither addresses whether the presumption of regularity applies to judgments reflecting an uncounseled

**50.** 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

**51.** *Id.* at 112, 115, 88 S.Ct. 258.

**52.** 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).

**53.** *State v. Ferguson,* 2005 UT App 144, ¶ 23, 111 P.3d 820.

**54.** *Parke,* 506 U.S. at 33–34, 113 S.Ct. 517.

**55.** *Id.* at 31, 113 S.Ct. 517.

**56.** *Id.* at 33, 113 S.Ct. 517.

**57.** *Id.* at 31, 113 S.Ct. 517.

**58.** *Id.*

**59.** *See Parke,* 506 U.S. at 31, 113 S.Ct. 517 (referring to the requirement that a defendant's guilty plea be knowing and voluntary).

**60.** *Id.*

**61.** 2005 UT 79, 125 P.3d 917.

**62.** *Id.* ¶ 25.

**63.** 369 U.S. 506, 516–17, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

**64.** 1987 Utah LEXIS 638, at *5.

**65.** *Id.; see also Carnley,* 369 U.S. at 516–17, 82 S.Ct. 884.

conviction.[66]

¶ 38 When read with *Triptow, Lucero* stands only for the proposition that deprivation of counsel claims enjoy a "special status" in our jurisprudence because of the constitutional importance of counsel.[67] We said nothing in *Lucero* to eliminate the *Triptow* presumption of regularity that we afford to judgments, even those judgments reflecting an uncounseled conviction.

¶ 39 In this case, the State presented a certified copy of Ferguson's conviction on the misdemeanor protective order charge. Under *Triptow,* we presume that this conviction was validly entered, even though it reflects that Ferguson was not represented by counsel. The burden then shifted to Ferguson to rebut this presumption by offering evidence that he "did not knowingly waive counsel." [68]

### B. *Minimal Evidence Is Required to Rebut the Presumption of Regularity*

¶ 40 To rebut the presumption of regularity, Ferguson must present "some evidence that he ... was not represented by counsel and did not knowingly waive counsel." [69] Relying on the court of appeals' statement in *State v. Gutierrez,*[70] the State asserts that more than a self-serving affidavit, or similar evidence, is required to rebut the presumption of regularity. We are troubled, however, that requiring defendants to produce more than a minimal amount of rebuttal evidence could undermine their constitutional rights.[71] Although a defendant bears some burden of proof in a collateral challenge to an unappealed prior conviction,

the State bears the ultimate burden.[72] Requiring that defendants produce evidence in addition to their own testimony would shift to the defendants the ultimate burden of proof—the very result we sought to avoid in *Triptow* by adopting the burden-shifting framework.[73] It would also undermine the "special status" that we afforded to deprivation of counsel claims in *Lucero.*[74] We consequently overrule *Gutierrez* to the extent that it is inconsistent with this opinion and emphasize that our reference in *Triptow* to "some evidence" may be satisfied by a defendant's own testimony.

¶ 41 In summary, although Ferguson must do more than merely produce a copy of the conviction reflecting that he was not represented by counsel, he need only come forward with some evidence to rebut the presumption of regularity. His own testimony that he did not waive his right to counsel is sufficient for this purpose. If Ferguson produces such evidence, the burden then shifts to the State to demonstrate by a preponderance of the evidence that Ferguson knowingly waived his right to counsel.[75]

### CONCLUSION

¶ 42 We affirm the court of appeals' holding that a previous uncounseled conviction imposing a suspended sentence cannot be used to enhance a subsequent criminal charge unless the defendant knowingly and intelligently waived his right to counsel. In determining whether a defendant did so, a previous conviction is presumed valid unless the defendant can rebut that presumption by offering evidence that he did not validly

---

66. *See Carnley,* 369 U.S. at 516–17, 82 S.Ct. 884; *Hamilton,* 1987 Utah LEXIS 638, paras. 5–6.

67. *Lucero,* 2005 UT 79, ¶ 25, 125 P.3d 917.

68. *Triptow,* 770 P.2d at 149.

69. *Id.*

70. 2003 UT App 95, ¶ 11, 68 P.3d 1035.

71. *See State v. Heaton,* 958 P.2d 911, 917 (Utah 1998).

72. *Parke,* 506 U.S. at 30–31, 113 S.Ct. 517.

73. *Triptow,* 770 P.2d at 149.

74. *Lucero v. Kennard,* 2005 UT 79, ¶ 25, 125 P.3d 917; *see also Lackawanna County Dist. Attorney v. Coss,* 532 U.S. 394, 404, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (indicating that deprivation of counsel claims "warrant[ ] special treatment among alleged constitutional violations").

75. *See, e.g., State v. Baker,* 169 Wis.2d 49, 485 N.W.2d 237, 248 (1992) (holding that the defendant overcame the presumption of regularity when he produced both a self-serving affidavit stating that he had not waived his right to counsel and an affidavit from his attorney indicating that he had made a good faith effort to find records from the prior proceeding).

waive his right to counsel. This burden is minimal, however, and can be satisfied by the defendant's own testimony. The burden then shifts to the State to establish the validity of the waiver. We therefore affirm the court of appeals and remand this case for further proceedings in accordance with this opinion.

¶ 43 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.