2008 UT 90

**Justin Brent PETERSON, Petitioner,**

v.

**Sheriff Aaron D. KENNARD, Chief Paul Cunningham, Salt Lake County Jail, and Taylorsville Justice Court, Respondents.**

No. 20070238.

Supreme Court of Utah.

Dec. 30, 2008.

Joan C. Watt, Heather A. Brereton, Debra M. Nelson, Salt Lake City, for petitioner.

John N. Brems, George B. Hofmann, Salt Lake City, for respondents.

NEHRING, Justice:

¶ 1 We agreed to answer three questions in our writ of certiorari. First, whether Justin Peterson's asserted lack of representation by counsel during the period he could appeal his conviction constitutes a special circumstance permitting him to seek post-conviction relief. We hold that there were no unusual circumstances or other common law excep-

tions that would allow Mr. Peterson to petition for post-conviction relief. Next, we consider whether the court of appeals applied the wrong burden of proof in its review of Mr. Peterson's challenge to the district court's denial of his post-conviction petition. We hold that the court of appeals correctly assigned Mr. Peterson the burden of proving that he did not waive his right to counsel, but we clarify the burden-shifting framework and the level of proof required when a defendant claims a deprivation of the right to counsel. Finally, we agreed to consider whether Mr. Peterson's signed plea affidavit was sufficient, standing alone, to establish that he had waived his right to counsel. We hold that the signed plea affidavit, by itself, was sufficient to allow a presumption of regularity to attach to the proceedings in the justice court. The burden was then on Mr. Peterson to overcome that presumption by presenting some evidence that his plea was not knowing and voluntary.

## BACKGROUND

¶ 2 Petitioner Justin Peterson was charged by Taylorsville City with one count each of possession of a controlled substance and possession of drug paraphernalia. Mr. Peterson agreed to be admitted to the Taylorsville Substance Abuse Court Program. A plea of guilty is a condition to acceptance into the program. The plea is then held in abeyance until the applicant successfully completes the program. At such time, the plea is withdrawn and the charges dismissed. To be eligible for the program, a defendant must consent to waive particular rights, including the right to counsel. Regarding the right to counsel, the program's application states,

> Counsel. I have the right to consult with and be represented by an attorney. If the judge were to determine that I am too poor to be able to hire a lawyer, then the judge could appoint one to represent me. I might later, if the judge determined I was able, be required to pay for the appointed lawyer's service to me.

Other waived rights include the right to a jury trial, the presumption of innocence, and the right to have the elements of the charged crime proven beyond a reasonable doubt. The waiver also pointed out that the conviction could be used to enhance penalties for any future convictions. Mr. Peterson initialed each of the application forms in a manner that indicated his desire to waive these rights.

¶ 3 Despite completing the application, Mr. Peterson was not accepted into the program and his case was set for trial. Two days before the trial date, Mr. Peterson appeared in Judge Michael Kwan's courtroom at the Taylorsville Justice Court and stated that he wanted to resolve his case then and there. Judge Kwan asked him if he wanted to plead guilty, and Mr. Peterson responded that he did. The judge then told Mr. Peterson to take a waiver form and sit down and read it. Mr. Peterson did so.

¶ 4 The waiver form is similar to the waiver form used in the substance abuse program and requires a defendant to initial each right to be waived and then sign the form. Mr. Peterson initialed each of the listed rights and then signed the form. The waived rights included the right to counsel, to a jury trial, and to the presumption of innocence. Judge Kwan then conducted the obligatory rule 11 colloquy [1] with Mr. Peterson regarding the waiver of rights.

¶ 5 Judge Kwan testified in a later hearing that his standard colloquy includes the following: (1) asking if the defendant has read the waiver; (2) asking if the defendant reads and understands the English language; (3) asking if the defendant understands that by pleading guilty he or she is waiving all the rights listed on the waiver; (4) informing the defendant that he or she could go to jail; (5) informing the defendant that if he or she wanted an attorney and could not afford one, one could be appointed; and (6) asking the defendant if anyone had promised him or her something for entering a guilty plea or if anyone had threatened him or her into enter-

---

**1.** Utah Rule of Criminal Procedure 11 requires judges to not accept a plea of guilty until the judge finds that the defendant understands, among other things, the nature of the crime, that the plea was voluntarily made, and if the defendant is not represented by counsel, that the right to counsel was knowingly waived.

ing a guilty plea. Because Mr. Peterson was facing two separate charges that day, Judge Kwan went through the colloquy twice, once for each charge. Mr. Peterson had appeared before Judge Kwan several times in the past on other charges, and based on his experience with Mr. Peterson, Judge Kwan felt comfortable that Mr. Peterson knew and understood what he was doing.[2]

¶ 6 Judge Kwan noted the following in the court docket, "[Defendant] entered guilty plea to all charges. [Defendant] advised of Rule 11 and signed waiver[.]" The judge then sentenced Mr. Peterson to jail for 360 days but then suspended the jail term, placed him on probation, and imposed a number of penalties and conditions. A week later, Judge Kwan revoked Mr. Peterson's probation, and Mr. Peterson served thirty-six days of his sentence before having it suspended once more. Nineteen months later, Mr. Peterson's probation was again revoked, and he was ordered to jail for the remaining 324 days. Mr. Peterson, however, was already serving time in jail for other crimes. Six months later, Mr. Peterson filed a petition for post-conviction relief, claiming that he did not waive his right to counsel and that his sentence was a violation of his Sixth Amendment right to counsel.

¶ 7 Taylorsville Justice Court responded by moving to dismiss the petition. The district court held a hearing on the motion that included testimony from both Mr. Peterson and Judge Kwan. Mr. Peterson claimed that his waiver of counsel was not knowing and voluntary because he did not read the waiver form but merely "grabbed it and signatured and then signed it." Mr. Peterson further claimed that the judge's colloquy was not extensive enough to inform him about the rules of procedure and evidence or the disadvantages of proceeding without counsel or of his right to a trial de novo. Cross-examination of Mr. Peterson by Taylorsville's counsel included the following testimony:

Q Now, at the time you signed Defendant's Exhibit 7, the waiver in this case—let me make sure I understand your testimony, you've testified that Judge Kwan asked you if you wanted a lawyer, correct?

A Yes.

Q And he asked you if you understood that you had a right to a lawyer, correct?

A Yes.

Q And you indicated that you didn't want a lawyer, correct?

A Yeah. I signed the waiver.

. . . .

Q And Judge Kwan asked you if you understood each of the rights that were listed on the form that you signed, . . . didn't he?

A Probably, yes.

Q And he asked you if you understood that by entering a guilty plea, you were giving up those rights, didn't he?

A Yes.

. . . .

Q He did discuss with you the consequences of a guilty plea, didn't he, the fact that you could be sentenced to jail?

A Yes.

Q And he explained to you how long you could be sentenced to jail before you entered your guilty plea, didn't he?

A Yeah.

Q And he asked you if you had reviewed the form that you were signing, didn't he?

A Yeah, I think so.

. . . .

Q And then finally before he accepted your guilty plea he asked if you were making a knowing and voluntary guilty plea, didn't he?

A Yes.

After reviewing the evidence, the district court concluded that Mr. Peterson had knowingly and voluntarily waived his right to counsel and did not meet the burden of proof to challenge the waiver. Mr. Peterson appealed the district court's ruling. The court of appeals affirmed and held that there were

---

**2.** Mr. Peterson previously signed two other waivers in the Taylorsville Justice Court and waived his right to an attorney at least twice in the Midvale Justice Court.

no unusual circumstances concerning his waiver and that his post-conviction "challenge to his justice court convictions is barred by his failure to seek a trial de novo in the district court." *Peterson v. Kennard,* 2007 UT App 26, ¶ 17, 156 P.3d 834. On alternative grounds, the court of appeals affirmed by noting that "the record contains ample evidence to support the district court's determination that Peterson failed to prove a violation of his right to have counsel present at his justice court plea hearing." *Id.* We granted certiorari to consider three questions brought by Mr. Peterson. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(a) (2008).

## STANDARD OF REVIEW

¶ 8 "On certiorari, we review the decision of the court of appeals, not that of the district court." *State v. Ferguson,* 2007 UT 1, ¶ 11, 169 P.3d 423. Our review is for correctness, and we cede no deference to that court. *Id.*

## ANALYSIS

¶ 9 Mr. Peterson asks us to consider the following questions: (1) whether Mr. Peterson's asserted lack of representation by counsel during the period when he could appeal his conviction constitutes a special circumstance permitting him to seek post-conviction relief; (2) whether the court of appeals erred in its assignment of the burdens of proof applicable to Mr. Peterson's petition for post-conviction relief; and (3) whether the court of appeals erred in its assessment of the signed plea affidavit in addressing the merits of the district court's denial of Mr. Peterson's petition for post-conviction relief. In analyzing these questions, we find it necessary to combine the elements of the first two questions. Specifically, in order to know if there were special or unusual circumstances, we needed to determine whether a valid waiver

occurred. In so doing, we address the burden of proof needed to determine when a defendant waives the right to counsel. Therefore, we analyze the first two questions together before addressing the role of the signed waiver form.

¶ 10 Mr. Peterson's case is noteworthy because it originated in justice court. Utah's justice courts are "courts not of record." Utah Code Ann. § 78A–1–101(2) (2008).[3] Because of this, appeals from justice court rulings are not subject to traditional record review. Instead, the Legislature, in recognizing the vital importance of a record to the operation of our courts, extended de novo review at the district court level to all statutory appeals[4] from justice court decisions. Utah Code Ann. § 78–5–120 (1996).[5] In certain instances, a prosecutor is likewise authorized to seek de novo review of adverse rulings in district court. *Id.* The absence of a record poses challenges for those who would review almost any action taken by a justice court. Without a record to guide a reviewing court, virtually no claim of error in a justice court can be evaluated on its merits. The Legislature has chosen to answer the question of whether error was committed by the expedient of granting the defendant a second chance in the district court.

¶ 11 The statutory framework for justice court appeals serves all parties well so long as those appeals are perfected within the thirty days allotted by law. *Id.* Indeed, we have observed that a defendant charged with an offense in a justice court is, "if anything, treated more favorably than a similarly situated district court defendant" because he is afforded the right to litigate anew a justice court conviction aided by having been exposed to a complete preview of the prosecution's case. *Bernat v. Allphin,* 2005 UT 1, ¶ 41, 106 P.3d 707. Mr. Peterson did not choose to pursue this advantage.

*See Lucero v. Kennard,* 2005 UT 79, ¶ 11, 125 P.3d 917.

---

3. Utah Code section 78A–1–101 was renumbered in 2008. No substantive changes were made; therefore, we cite to the new version.

4. We have held that de novo review from a justice court is an "appeal" and thus satisfies article I, section 12 of the state constitution, which guarantees "a right to appeal in all cases."

5. Utah Code section 78–5–120 was amended and renumbered as 78A–7–118 in 2008. Because substantive changes were made to this section, we cite to the version in effect at the time of Mr. Peterson's petition for post-conviction relief.

¶ 12 Instead, Mr. Peterson's claim comes to us by way of a petition under Utah's Post–Conviction Remedies Act, Utah Code Ann. §§ 78–35a–101 to –304 (2002),[6] filed long after the expiration of the thirty-day time period for obtaining de novo review in the district court. Mr. Peterson claims that when he entered his uncounseled plea of guilty to misdemeanor drug charges in justice court, he made an involuntary and unknowing waiver of his right to counsel. According to Mr. Peterson, he was thereby deprived of his right to be represented by a lawyer who could have helped him understand that he was entitled to de novo review in district court. Of course, had Mr. Peterson made a timely appeal, it would have been unnecessary to confront the issue of whether his waiver was knowing and voluntary because he would have appeared with a clean slate and with a lawyer. But he did not. Instead of appealing after his probation was first revoked, two weeks after sentencing and when he was sent to jail for thirty-six days, Mr. Peterson waited to act for almost two years and until he faced serving the remainder of the 360–day jail sentence. It was not until this point that he questioned the circumstances under which he surrendered his right to be represented by a lawyer.

■ ¶ 13 Because Mr. Peterson failed to take issue with his uncounseled status within the statutory time to appeal, his conviction and sentence are " 'entitled to a presumption of regularity.' " *State v. Ferguson*, 2007 UT 1, ¶ 33, 169 P.3d 423 (quoting *State v. Triptow*, 770 P.2d 146, 149 (Utah 1989)); *see also Lucero v. Kennard*, 2005 UT 79, ¶ 24, 125 P.3d 917 ("In a proceeding where a defendant seeks to collaterally attack a court's judgment, we presume the regularity of the proceedings below."). Despite the presumption of regularity that attaches to Mr. Peter-

son's conviction, we recognize that a deprivation-of-counsel claim acquires a special status because of the constitutional right to counsel granted by the Sixth Amendment. Therefore, we "may not presume waiver of the right to counsel unless there is some evidence that the defendant affirmatively acquiesced to the waiver of counsel." *Lucero*, 2005 UT 79, ¶ 25, 125 P.3d 917. If there was no waiver, then Mr. Peterson's conviction would have violated the Sixth Amendment. As a result, both his conviction and sentence would have been invalid.[7]

¶ 14 A defendant can waive his right to counsel. "The United States Supreme Court . . . held that the Sixth Amendment implicitly guarantees criminal defendants the ability to waive their right to assistance of counsel and proceed pro se." *State v. Pedockie*, 2006 UT 28, ¶ 26, 137 P.3d 716 (footnote omitted). We have recognized three ways that a defendant may give up his constitutional right to the assistance of counsel: through an express or "true" waiver; through forfeiture; and through a waiver by conduct. *Id.* ¶ 27. Here, the district court found that Mr. Peterson had expressly waived his right to counsel.

¶ 15 As noted above, Mr. Peterson did not appeal the waiver. Nor did he move to withdraw his plea agreement within the time permitted by law. In *Manning v. State*, 2005 UT 61, ¶ 36, 122 P.3d 628, we reaffirmed the requirement we announced in *State v. Reyes*, 2002 UT 13, ¶ 3, 40 P.3d 630, that a defendant who seeks to challenge a plea agreement or the waiver of rights contained in the agreement must first move to withdraw the plea within the time permitted to seek that relief. Because Mr. Peterson did not, his only avenue for relief is through collateral post-conviction review.

6. The Utah Post–Conviction Remedies Act was amended and renumbered in 2008 as Utah Code sections 78B–9–101 to –405. Because substantive changes were made to the Act, we cite to the version in effect at the time of Mr. Peterson's petition for post-conviction relief.

7. Even though Mr. Peterson challenges only the jail sentence and not the conviction, we have read *Alabama v. Shelton*, 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002), the controlling authority from the United States Supreme Court

on the Sixth Amendment right to counsel and sentencing, to require the invalidation of a conviction obtained in violation of the Sixth Amendment for all purposes. *Ferguson*, 2007 UT 1, ¶ 19, 169 P.3d 423. Thus, were we to conclude that Mr. Peterson was unconstitutionally deprived of his right to counsel, Mr. Peterson would be entitled to the vacation of his conviction, relief more expansive than the vacation of the jail sentence that he has requested.

¶ 16 A defendant who seeks post-conviction review is allowed only two narrow means of access to the courtroom. The first entryway is through the Post–Conviction Remedies Act. Utah Code Ann. §§ 78–35a–101 to –304. The second doorway is through our common law writ authority.[8]

¶ 17 Although a district court's de novo review of a justice court ruling differs markedly from a direct appeal from a court of record, the PCRA applies, and it bars, without exception, relief for defendants who have not sought direct appeal. Utah Code Ann. § 78–35a–102(1) (requiring exhaustion of "all other legal remedies, including a direct appeal"); *id.* § 78–35a–106(1)(c) (precluding relief upon grounds that "could have been but [were] not raised at trial or on appeal"). The only recourse available to a defendant who, like Mr. Peterson, did not seek de novo review is through our common law writ authority.

■■ ¶ 18 Generally, we will withhold our power to grant common law post-conviction relief to a defendant whose " 'contention of error [was] known or should have been known to the petitioner at the time of judgment,' " and was not pursued " 'through the regular and prescribed procedure.' " *Lucero,* 2005 UT 79, ¶ 29, 125 P.3d 917 (alteration in original) (quoting *Carter v. Galetka,* 2001 UT 96, ¶ 14, 44 P.3d 626). Our common law post-conviction jurisprudence recognizes, however, two separate but related means by which a defendant may obtain a review of the merits of his post-conviction petition despite having failed to exhaust his right to direct appeal. The first common law exception to the exhaustion of the legal-remedies bar to post-conviction relief takes the form of rules that we have fashioned expressly for the purpose of identifying circumstances under which a failure to exhaust the right of direct appeal should be excused. These rules feature prominently in *Manning* and *Lucero,* two cases we will discuss below in greater detail. The second common law exception

that may also lift the procedural bar to post-conviction relief is the occurrence of unusual circumstances. Unusual circumstances are those that confront us with "an obvious injustice or a substantial and prejudicial denial of a constitutional right." *Hurst v. Cook,* 777 P.2d 1029, 1035 (Utah 1989). We will examine both of these exceptions in turn.

■ ¶ 19 The common law rules that may lift the procedural bar to post-conviction relief were first established in *Manning.* In that case, Ms. Manning entered a guilty plea and expressly waived her right to appeal. Later, after the appeal period had passed, she claimed that she had been denied her right to appeal. She based this claim on the failure of her lawyer to tell her about the time limits for filing a notice of appeal. Post-conviction relief was the avenue that Ms. Manning followed in her attempt to undo her plea. We held that the PCRA was not available to her because it is a remedy only for those who challenge " 'a conviction or sentence for a criminal offense and who [have] exhausted all other legal remedies, including direct appeal.' " *Manning,* 2005 UT 61, ¶ 24, 122 P.3d 628 (quoting Utah Code Ann. § 78–35a–102(1)). We decided, however, that there must be some "readily accessible and procedurally simple method by which persons improperly denied their right to appeal can promptly exercise [that] right." *Id.* ¶ 26. Generally, a defendant who fails to file a timely notice of appeal is presumed to have knowingly and voluntarily waived his right to appeal. *Id.* ¶ 42. To overcome this presumption, a defendant must prove that he was "unconstitutionally deprived, through no fault of his own, of his right to appeal." *Id.* ¶ 31. We noted three exceptions that would allow the post-conviction procedural bar to be overcome. These are

(1) the defendant asked his or her attorney to file an appeal but the attorney, after agreeing to file, failed to do so; (2) the defendant diligently but futilely attempted

8. We recognize that the PCRA was amended in 2008 and became "the *sole remedy* for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies." Utah Code Ann. § 78B–9–102(1) (2008) (emphasis added). This amendment appears to have extinguished our common law writ authority for future cases. Because Mr. Peterson sought post-conviction relief prior to the implementation of the 2008 amendment, relief through our common law writ authority is still available to him.

to appeal within the statutory time frame without fault on defendant's part; or (3) the court or the defendant's attorney failed to properly advise defendant of the right to appeal.

*Id.* (citations omitted). The defendant must then prove these exceptions by a preponderance of the evidence. *Id.* ¶ 32. We concluded that Ms. Manning had not carried her burden of proving that her failure to timely appeal was due to circumstances that amounted to a "denial" of her right to appeal. In so doing, we reiterated as "well established" the principle that the right to appeal "will be considered waived where the defendant enters a knowing and voluntary guilty plea pursuant to a plea agreement that expressly waives the right to appeal and is entered in accordance with the procedural safeguards of rule 11 of the Utah Rules of Criminal Procedure." *Id.* ¶ 36.

¶ 20 Of the three exceptions we listed in *Manning,* only the last could be applicable to Mr. Peterson. However, under the *Manning* rules, Mr. Peterson would have to prove by a preponderance of the evidence that he had been unconstitutionally deprived of his right to counsel. The district court held a full evidentiary hearing and determined that Mr. Peterson had not carried his burden on that matter. The factual determinations of the district court are not before us on certiorari, and therefore, we will not overturn its findings.

■ ¶ 21 We turn next to *Lucero,* which tailored our analysis of post-conviction relief to justice court defendants. When we addressed Mr. Lucero's quest for post-conviction relief, we adopted common law rules that incorporated the basic principles underlying the *Manning* rules but crafted them in a manner that took into account the unique features of de novo review from a justice court ruling. *Lucero,* 2005 UT 79, ¶ 11, 125 P.3d 917; *see also Bernat,* 2005 UT 1, ¶ 8, 106 P.3d 707 (providing a trial de novo in district court to a defendant found guilty in justice court, if notice of appeal is filed within thirty days of sentencing or guilty plea). Mr. Lucero claimed that his guilty plea and resulting jail sentence were illegal because he was deprived of his Sixth Amendment right to counsel. Because Mr. Lucero sought relief via the PCRA and not by way of a direct appeal, we reasoned that it would be improper for us to provide common law relief to right a constitutional wrong that could have been ameliorated by the plain, speedy, and adequate remedy provided by a trial de novo. *Lucero,* 2005 UT 79, ¶ 38, 125 P.3d 917. Post-conviction relief would be available only to a defendant who could establish that "the constitutional violation was the kind that would demand relief beyond a new trial." *Id.* Mr. Lucero did not qualify for relief under this standard and neither does Mr. Peterson. Mr. Peterson's claim that his lack of counsel denied him the right to appeal could have been remedied in a trial de novo. By not appealing, he failed to exhaust his remedies and is thus barred under both the *Manning* and *Lucero* common law rules dealing with post-conviction relief.

■ ¶ 22 Despite failing to exhaust his legal remedies, one last avenue remains open for Mr. Peterson. The unusual circumstances exception provides review of a post-conviction relief petition if a defendant is otherwise ineligible for post-conviction relief. *Id.* ¶ 43; *see also Carter,* 2001 UT 96, ¶ 14, 44 P.3d 626 ("[I]ssues that could and should have been raised on direct appeal, but were not, may not properly be raised in a habeas corpus proceeding, absent unusual circumstances."). As we stated above, unusual circumstances confront us with "an obvious injustice or a substantial and prejudicial denial of a constitutional right." *Hurst,* 777 P.2d at 1035. Defined this way, unusual circumstances may appear in many forms, some directly linked to a failure to exhaust a right of direct appeal, some not. It may, therefore, be appropriate for us to exercise our common law unusual circumstances authority in ways that have little or nothing to do with exhaustion of legal remedies. Accordingly, our unusual circumstances authority is broader in its reach, though no less rigorously applied, than our rules governing exceptions to the procedural bar based on the failure to exhaust the right of direct appeal.

¶ 23 Mr. Peterson claims that the unusual circumstances exception should apply to him because he was deprived of counsel during

the time that he could have appealed his justice court conviction. Taylorsville Justice Court, on the other hand, argues that Mr. Peterson made a knowing and voluntary waiver of his right to counsel and cannot now claim that he was deprived of counsel. The key, then, is whether Mr. Peterson knowingly and voluntarily waived his right to counsel.

¶ 24 When analyzing Mr. Peterson's claim that he did not knowingly and voluntarily waive his right to counsel, the court of appeals relied upon our opinion in *Lucero*. There, we stated the long held presumption that "where a defendant seeks to collaterally attack a court's judgment, we presume the regularity of the proceedings below." *Lucero*, 2005 UT 79, ¶ 24, 125 P.3d 917; *see also Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("When collaterally attacked, the judgment of a court carries with it a presumption of regularity."). Normally, the defendant then bears the burden of overcoming that presumption by a preponderance of the evidence. *Lucero*, 2005 UT 79, ¶ 24, 125 P.3d 917. We stated, however, and the court of appeals recognized, that a special status is conferred upon deprivation-of-counsel claims because of the constitutional right to counsel. *Id.* ¶ 25; *see Peterson v. Kennard*, 2007 UT App 26, ¶ 14, 156 P.3d 834. Thus, a court cannot "presume waiver of the right to counsel unless there is some evidence that the defendant affirmatively acquiesced to the waiver of counsel." *Lucero*, 2005 UT 79, ¶ 25, 125 P.3d 917. If evidence of acquiescence is presented, however, a presumption of regularity is established and the burden shifts to the defendant to prove by some evidence, as we will discuss below, that the right to counsel was not knowingly, intelligently, and voluntarily waived. *Id.* The court of appeals found that Mr. Peterson's signed waiver was enough evidence to prove acquiescence and shift the burden back to Mr. Peterson. The court then held that Mr. Peterson offered only self-serving testimony and this was not enough to overcome his burden of proof.

¶ 25 We note, however, that less than a month before the court of appeals' decision, we decided the case of *State v. Ferguson*. 2007 UT 1, 169 P.3d 423. In that case, we clarified the burden-shifting framework for a defendant claiming deprivation of counsel. Although the outcome in Mr. Peterson's case is the same as under the court of appeals' analysis, we reiterate the correct framework that we announced in *Ferguson*. In that case, Mr. Ferguson was charged with violating a protective order, a class A misdemeanor. *Id.* ¶ 8. Because Mr. Ferguson had previously been convicted on the same charge, the state sought to enhance the new charge to a third degree felony. *Id.* At the preliminary hearing, the state offered a certified copy of Mr. Ferguson's prior conviction. *Id.* Mr. Ferguson objected and stated that the original conviction had been obtained illegally because, as was shown on the conviction notice, he had not been represented by counsel. *Id.* Mr. Ferguson then argued that a prior uncounseled misdemeanor conviction could not be used for enhancement purposes. *Id.*

¶ 26 We began our analysis in *Ferguson* by looking back to our earlier judgment in *Triptow*, 770 P.2d 146, and noting that "judgments based on uncounseled convictions are entitled to a presumption of regularity." *Ferguson*, 2007 UT 1, ¶ 32, 169 P.3d 423; *see Triptow*, 770 P.2d at 149. Regularity was established in *Ferguson* by the state merely offering a certified copy of Mr. Ferguson's conviction. Mr. Ferguson argued that under our analysis in *Lucero* there could be no presumption of regularity in an uncounseled conviction because of the special status we afford to right to counsel claims. That was not, however, the import of the *Lucero* holding. Rather, as we stated in *Ferguson*, and as we reiterate now, *Lucero* stood for the sole proposition that "it is impermissible to presume a waiver of counsel where a trial record is silent on the issue of waiver.... [N]othing in *Lucero* ... eliminate[s] the *Triptow* presumption of regularity that we afford to judgments, even those judgments reflecting an uncounseled conviction." *Ferguson*, 2007 UT 1, ¶¶ 37–38, 169 P.3d 423. In *Ferguson*, the state met its initial burden when it presented a certified copy of Mr. Ferguson's conviction. The conviction reflected that Mr. Ferguson had not been represented by counsel, and therefore the record was not silent on the issue of waiver.

We held that the presumption of regularity applied.

¶ 27 Once regularity was established, we held that the burden shifts to the defendant to rebut the presumption by "offering evidence that he 'did not knowingly waive counsel.'" *Id.* ¶ 39 (quoting *Triptow,* 770 P.2d at 149). We noted that this burden is very minimal. "Requiring that defendants produce evidence in addition to their own testimony would shift to the defendants the ultimate burden of proof," an outcome that we sought to avoid. *Id.* ¶ 40. Such a requirement would also diminish the special status of deprivation-of-counsel claims under *Lucero.* We therefore required that a defendant "need only come forward with some evidence to rebut the presumption of regularity," and that a defendant's "own testimony . . . is sufficient for this purpose." *Ferguson,* 2007 UT 1, ¶ 41, 169 P.3d 423. Once such evidence is produced, "the burden then shifts to the State to demonstrate by a preponderance of the evidence that [the defendant] knowingly waived his right to counsel." *Id.* In sum, a presumption of regularity attaches to any previous judgment, including those by a justice court. This presumption extends to waiver of counsel by the defendant, unless the record is silent on that issue, and there is no evidence of acquiescence by the defendant. To rebut the presumption of regularity, the defendant need only present some evidence, including self-serving testimony, of his not having waived the right to counsel. The burden then shifts back to the state to prove by a preponderance of the evidence that the defendant knowingly and voluntarily waived his right to counsel.

¶ 28 In the case of Mr. Peterson, the justice court's action earned a presumption of regularity because the record is not silent on the issue of waiver. The court docket and Mr. Peterson's signed waiver form provide the necessary evidence of acquiescence. It was then up to Mr. Peterson to offer some evidence that he did not knowingly and voluntarily waive his right to counsel. Mr. Peterson stated in his testimony before the district court that he did not read the waiver form and therefore did not knowingly and voluntarily waive his right to counsel. Mr.

Peterson's own testimony, however, rebuts this assertion where he admitted that he was presented a plea agreement form which he reviewed, that the form contained an acknowledgment that he had a right to be represented by a lawyer, and that he initialed confirmation of his desire to waive that right. Furthermore, Mr. Peterson testified that he was asked by the judge if he wanted a lawyer and that he understood that he had a right to a lawyer. Mr. Peterson testified that he did not want one. His testimony also conceded that the judge asked if he understood each of the rights, including waiver of counsel, on his plea form. Mr. Peterson testified that he understood and that by signing the form he was giving up those rights and could be sentenced to jail. Finally, Mr. Peterson told the judge that he had reviewed the plea form and that his plea was knowing and voluntary.

¶ 29 Mr. Peterson's assertion that he did not knowingly and voluntarily waive his right to counsel, in light of his testimony that he did, is insufficient because it is unbelievable. It therefore does not rise to the minimal level of "some evidence" that is required to rebut the presumption of regularity. Rather, it is clear from the district court record that Mr. Peterson knew what he was doing when he waived his right to be represented by counsel. As a result, there is no burden shift to the Justice Court and no need for it to prove by a preponderance of the evidence that Mr. Peterson waived his right to counsel. Because Mr. Peterson did waive his right to counsel, there are no unusual circumstances that would allow him to overcome the bar to post-conviction relief.

¶ 30 In explaining how our unusual circumstances analysis depends on whether Mr. Peterson waived his right to counsel, we have also clarified the court of appeals' analysis when it placed the burden of proof on Mr. Peterson to demonstrate that he was unlawfully denied counsel. The court of appeals did err when it stated that Mr. Peterson offered no evidence besides his own self-serving testimony and that this was not enough to overcome his burden of proof. As we stated in *Ferguson,* a defendant's burden of proof in waiver of counsel cases is very minimal and the defendant's "own testimony

... is sufficient for this purpose." 2007 UT 1, ¶ 41, 169 P.3d 423. In Mr. Peterson's case, however, his self-serving testimony was unbelievable and therefore insufficient.

¶ 31 The final question we agreed to answer on certiorari is whether the court of appeals' reliance on the written waiver alone was enough to establish that Mr. Peterson waived his right to counsel. Though the court of appeals, like us, did not find any unusual circumstances, it went on to review the merits of the case. It concluded that the district court's dismissal of Mr. Peterson's petition for post-conviction relief on its merits was proper. *Peterson*, 2007 UT App 26, ¶ 13, 156 P.3d 834. As we noted above, regularity attaches in waiver of counsel cases when there is evidence of acquiescence by the defendant. Here Mr. Peterson's plea affidavit provides evidence that the record was not silent on the subject of waiver and therefore *Lucero's* exception to regularity does not apply. Rather, the plea affidavit, by itself, was enough evidence to allow a presumption of regularity to attach to the justice court proceedings. The burden was then on Mr. Peterson to prove by some believable evidence that he did not knowingly and voluntarily waive his right to counsel. As we have held, Mr. Peterson did not overcome this minimal burden.

## CONCLUSION

¶ 32 In conclusion, we hold that Mr. Peterson is not entitled to post-conviction relief because he did not exhaust his remedies as required by the PCRA and that no common law exception, including unusual circumstances, is available to him. We further hold that the correct framework for analyzing waivers of counsel is as follows: (1) If the record is not silent as to the issue of waiver, a presumption of regularity attaches to all prior judgments, including those by a justice court; (2) To overcome a presumption of regularity, a defendant has the minimal burden of offering some evidence, even self-serving testimony; and (3) Once the presumption is overcome, the burden shifts to the state to prove by a preponderance of the evidence that the defendant knowingly and voluntarily waived his right to counsel. If,

however, the record is silent as to the appointment or waiver of counsel, no presumption of regularity may be assumed. Rather, the state must produce some evidence of acquiescence of waiver by the defendant. A signed plea affidavit waiving the right to counsel is enough evidence to prove acquiescence by the defendant and establish the presumption of regularity.

¶ 33 The decision of the court of appeals is affirmed but on the basis of the framework established in this opinion.

¶ 34 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING'S opinion.