2015 UT App 122

## THE UTAH COURT OF APPEALS

JESUS ALFONZO VALENZUELA-LOZOYA,
Petitioner and Appellee,
*v.*
WEST VALLEY CITY,
Respondent and Appellant.

Memorandum Decision
No. 20140054-CA
Filed May 14, 2015

Third District Court, Salt Lake Department
The Honorable John Paul Kennedy
No. 130902649

Ryan D. Robinson and Daniel R. Strong, Attorneys
for Appellant

T. Laura Lui and Gage C. Herbst, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES JOHN A. PEARCE and KATE A. TOOMEY concurred.

ROTH, Judge:

¶1 West Valley City (the City) appeals the district court's grant of postconviction relief to Jesus Alfonzo Valenzuela-Lozoya, which overturned his conviction for driving under the influence of alcohol (DUI). We reverse and remand for further proceedings.

¶2 On May 19, 2012, the City charged Valenzuela-Lozoya with DUI, driving on the sidewalk, driving without a valid license, and minor in possession of alcohol. On May 23, 2012, Valenzuela-Lozoya pleaded guilty in the justice court to the DUI offense in exchange for dismissal of the other charges. He signed a plea agreement that stated the factual basis for his plea,

informed him of the burden of proof and the presumption of innocence, and advised him of the other constitutional rights he was waiving, including the rights to a speedy public trial before an impartial jury, to compel and examine witnesses, and to either testify or remain silent. Valenzuela-Lozoya initialed next to the description of each right he was waiving.[1] The plea agreement also included a "certification of voluntariness." Of significance here, Valenzuela-Lozoya initialed the following two statements:

> I am entering this plea of my own free will and choice. No force, threats, o[r] unlawful influence of any kind have been made to get me to plead guilty (or no contest). No promises except those contained in this statement have been made to me.

> I have read this statement, or I have had it read to me by my attorney, and I understand its contents and adopt each statement in it as my own. I know that I am free to change or delete anything contained in this statement, but I do not wish to make any changes because all of the statements are correct.

Both Valenzuela-Lozoya and his attorney signed the plea agreement.

¶3     That same day, Valenzuela-Lozoya entered his guilty plea in justice court. As part of that process, the justice court judge made the following inquiry:

---

1. Valenzuela-Lozoya points out, however, that he did not initial the factual basis for his plea, even though there was a space for him to do so.

> You've read through this [plea agreement] form that tells me you understand what rights you have. You'd be admitting that on this day you drove a motor vehicle with sufficient alcohol in your system such—breath test of .217, which is greater than a .08. By pleading guilty, you're waiving the rights you have. And you've initialed throughout this form; that tells me you've read through it, you know what rights you have, you've talked it over with your attorney to your satisfaction.
>
> If you wanted more time or your trial rights, we'd happily afford them to you, but you are waiving them by going forward today and pleading guilty. Do you understand that?[2]

Valenzuela-Lozoya responded, "Yes, sir." The judge then advised Valenzuela-Lozoya of his right to appeal, accepted his guilty plea, and announced sentence. Valenzuela-Lozoya did not appeal.

¶4      Nearly eleven months later, on April 12, 2013, Valenzuela-Lozoya filed a petition for postconviction relief in the district court. The premise of his petition was that the DUI conviction resulted from a plea that "was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea." Valenzuela-Lozoya argued that the justice court had not complied with rule 11(e) of the Utah Rules of Criminal Procedure and that defense counsel had not provided effective assistance of counsel. Valenzuela-Lozoya

---

2. Although the justice court is not a court of record, Valenzuela-Lozoya attached a certified transcript of the plea hearing to his petition for postconviction relief. The City does not dispute the accuracy of the transcript.

based both the rule 11 claim and the ineffective assistance claim on a contention that neither the court nor counsel had advised him of the potential immigration consequences of pleading guilty to DUI. Specifically, he asserted that he was not made aware that the DUI conviction would lead to "his current deportation proceedings, and would not allow him to qualify for DACA," the Deferred Action for Childhood Arrival program. Valenzuela-Lozoya claims DACA would have allowed him to legally remain in the United States but for the DUI conviction.

¶5 In response to Valenzuela-Lozoya's petition, the City argued that the totality of the circumstances, including Valenzuela-Lozoya's signed and initialed plea agreement and the justice court's colloquy at the plea hearing, demonstrated that the court had adequately met the requirements of rule 11 for notifying Valenzuela-Lozoya of the consequences of the plea and that the plea was knowing and voluntary. The City also asserted that defense counsel did not render ineffective assistance. It argued that the plea had no bearing on the deportation proceedings because authorities from Immigration and Customs Enforcement (ICE) placed him on "an immigration hold" at the time of his arrest due to his "undocumented" status in the United States, not because of the DUI. The City further argued that defense counsel could not have notified Valenzuela-Lozoya of any DACA consequences because DACA did not exist at the time of Valenzuela-Lozoya's plea and was not even announced until June 2012, which was weeks after Valenzuela-Lozoya had pleaded guilty.

¶6 After four months elapsed without either a response to the City's objection or another filing requiring court action, the City asked the district court to order Valenzuela-Lozoya to "show cause why the case should not be dismissed" for failure to prosecute. The district court held an order to show cause hearing on December 3, 2013. At the hearing, Valenzuela-Lozoya requested a three-day extension to file a reply to the City's

objection to his petition. The City opposed an extension, arguing that Valenzuela-Lozoya had had ample time to respond and that he was only seeking an extension to delay the proceedings because ICE would not make a decision about whether to actually proceed with deportation until it learned "the outcome of this case." When ask about his motivation for the extension, Valenzuela-Lozoya replied,

> [T]he City's objection [regarding the timing of DACA] was excellent, and it's been taking us some time to try to figure out a way to reply in a manner that had some teeth to it. We believe that we . . . have finally found some case law that at least would give us some teeth into the matter . . . .

Valenzuela-Lozoya then raised a claim not set out in his original petition. He argued that the justice court had committed a rule 11 violation when it failed to specifically ask him during the plea colloquy "if he has read the waiver, if he acknowledges the waiver and if he understands the waiver, and if he has any questions regarding the waiver."[3] The court's failure to strictly comply with rule 11, Valenzuela-Lozoya contended, meant that the plea agreement—and consequently his waiver of rights—had not been properly incorporated into the record and made his plea invalid. *See* Utah R. Crim. P. 11(e).

¶7     Although the hearing had been scheduled only as an order to show cause hearing, the district court then stated that it was ready to hear the merits of the postconviction petition and invited the City to respond to Valenzuela-Lozoya's argument. The City responded to both the DACA claims in the petition and Valenzuela-Lozoya's new claim that the justice court had

---

3. In this context, Valenzuela-Lozoya used the word "waiver" to refer to the plea agreement.

violated rule 11 by not specifically inquiring into his understanding of his rights. It first contended that because Valenzuela-Lozoya's plea "pre-dated the announcement" of DACA, neither defense counsel nor the justice court could have informed him of the risk that a guilty plea would make him ineligible for DACA relief. The City then addressed Valenzuela-Lozoya's argument that the justice court had failed to comply with rule 11 in its inquiry into Valenzuela-Lozoya's understanding of the waiver of his rights. The City explained that not only did the plea agreement that Valenzuela-Lozoya had initialed and signed thoroughly inform him of his rights, as well as the consequences of the plea, but the judge had also discussed those rights with Valenzuela-Lozoya and then confirmed that he had conferred with his attorney about his rights and the decision to plead guilty and understood that by pleading guilty he was giving up those rights. At this point, the court asked the City, "[Valenzuela-Lozoya] is saying that Counsel should have filed an appeal within 30 days after the plea saying, 'I wasn't given my Rule 11 colloquy in an appropriate way, and therefore I shouldn't be held to stick by my plea agreement.' . . . Why isn't that ineffective assistance?" The City responded that "it wasn't ineffective" because Valenzuela-Lozoya had received the benefit of a very favorable deal that he had been happy with until the announcement of DACA, which occurred well after he entered his plea.[4]

---

4. It is undisputed that DACA had not been announced when Valenzuela-Lozoya entered his guilty plea. On appeal, Valenzuela-Lozoya contends that "DACA was officially authorized a mere two and a half weeks after [his] plea" and therefore could have been a basis for immediately seeking a trial de novo in the district court. Valenzuela-Lozoya also argues that at the time of his plea, "there was considerable discussion regarding the availability of this form of immigration relief to individuals in [his] situation."

Valenzuela-Lozoya did not specifically address the DACA issue at the hearing.

¶8     After hearing argument, the district court ruled from the bench, granting Valenzuela-Lozoya's petition with the explanation that it had not "seen a request by a defendant to withdraw a plea that hasn't been approved by the Court of Appeals." The City protested that it could provide cases to rebut that statement but did not have any with it because it had not been prepared for argument on the merits of the petition at what had been scheduled as an order to show cause hearing. The district court refused the request, explaining that it had given the City an opportunity to respond and that although the City had "made a good argument," the court agreed, on balance, with Valenzuela-Lozoya. It then directed Valenzuela-Lozoya to prepare an order vacating the conviction. Later that day, Valenzuela-Lozoya filed a notice to submit and an Order Overturning Conviction, which the court signed. The order explained that the basis for overturning Valenzuela-Lozoya's conviction was that the justice court "failed to adequately question [Valenzuela-Lozoya] in relation to [the plea agreement]" as required by rule 11(e), causing his waiver of rights to "not [be] incorporated into the record" and to be "invalid for any and all purposes, including, but not limited to, obtaining a knowing and voluntary plea."

¶9     The City appeals, arguing that the district court erred in granting postconviction relief because (1) it applied the wrong standard for assessing the claimed rule 11 violation, (2) Valenzuela-Lozoya's claims are procedurally barred by the Post-Conviction Remedies Act (the PCRA),[5] and (3) to the extent

---

5. The City raises this issue for the first time on appeal but is explicitly authorized to do so by the PCRA. *See* Utah Code Ann. § 78B-9-106(2) (LexisNexis 2012) (explaining that, in most cases,

(continued…)

Valenzuela-Lozoya might have overcome the PCRA's procedural bar through an ineffective assistance of counsel claim, he has failed to demonstrate that defense counsel was ineffective. Thus, the City asks us to "reverse the district court's Order Overturning Conviction."

¶10 We agree with the City that the district court used the wrong standard to assess the rule 11 claim and also that Valenzuela-Lozoya's claims were procedurally barred, except to the extent that he raised a claim of ineffective assistance of counsel. Regarding the ineffective assistance claim, we conclude that it presents factual questions that must be resolved by the district court before a decision can be made on the merits of the petition for postconviction relief.

## I. The District Court Applied the Wrong Standard in Assessing Valenzuela-Lozoya's Rule 11 Claim.

¶11 "A guilty plea involves the waiver of several constitutional rights and is therefore valid . . . only if it is made voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *State v. Alexander*, 2012 UT 27, ¶ 16, 279 P.3d 371 (citation and internal quotation marks omitted). "In order to ensure that defendants have a complete understanding of the charge and of the constitutional rights they are waiving by entering a plea, [the Utah Supreme Court] created rule 11 of the Utah Rules of Criminal Procedure." *Id.* ¶ 17. "Rule 11 highlights important rights" that the court must ensure defendants

---

(…continued)

the government "may raise any of the procedural bars . . . at any time, including during [its] appeal from an order granting postconviction relief"). Valenzuela-Lozoya does not dispute this.

"understand in order for their pleas to be valid." *Id.* ¶ 24; *see also* Utah R. Crim. P. 11(e).

¶12    However, "a failure to comply with Utah's rule 11 does not in itself amount to a violation of a defendant's rights under either the Utah or the United States Constitution." *Moench v. State*, 2004 UT App 57, ¶ 17, 88 P.3d 353 (citation and internal quotation marks omitted); *see also* Utah R. Crim. P. 11(l) ("Failure to comply with this rule is not, by itself, sufficient grounds for a collateral attack on a guilty plea."). Rather, a defendant "must show that the guilty plea was in fact not knowing and voluntary." *Moench*, 2004 UT App 57, ¶ 17 (citation and internal quotation marks omitted). This inquiry should "not [be] limited to the record of the plea hearing but may look at the surrounding facts and circumstances including the information [the defendant] received from his . . . attorney[] before entering the plea." *Id.* (omission and third alteration in original) (citation and internal quotation marks omitted).

¶13    In the district court, Valenzuela-Lozoya argued that his guilty plea ought to be set aside and his conviction overturned because the justice court failed to strictly comply with rule 11 by "affirmatively ask[ing]" specific questions regarding his knowledge and understanding of the rights he was giving up by pleading guilty. The district court agreed, finding that prior to accepting Valenzuela-Lozoya's guilty plea, the justice court "failed to adequately question [him]" in relation to the plea agreement that addressed his rights and therefore failed to adequately incorporate it into the record as required by rule 11(e). But by confining its analysis to whether the justice court had strictly complied with rule 11, the district court unnecessarily curtailed its inquiry into whether Valenzuela-Lozoya's plea was knowing and voluntary, a determination that must take into account not only rule 11 compliance but all the "surrounding facts and circumstances" of the plea. *See id.* (citation and internal quotation marks omitted). Because the

district court applied the wrong legal standard, its grant of postconviction relief was inappropriate.

¶14 While the City has argued on appeal that the district court applied the wrong legal standard in determining that Valenzuela-Lozoya's plea was not knowing and voluntary, it also contends that the standard applied is immaterial because, in any event, Valenzuela-Lozoya was not eligible for postconviction relief at all due to his failure to bring a direct appeal. As we will discuss in the following section, we disagree.

## II. Valenzuela-Lozoya's Ineffective Assistance of Counsel Claim Falls Within an Exception to the PCRA's Procedural Bar.

¶15 The City makes two related arguments in support of its contention that Valenzuela-Lozoya is ineligible for postconviction relief. First, it claims that Valenzuela-Lozoya failed to exhaust all legal remedies. Second, it asserts that Valenzuela-Lozoya's claims are barred because he could have and should have sought an appeal in the form of a trial de novo in the district court.

¶16 The PCRA provides a remedy "for any person who challenges a conviction . . . for a criminal offense and who has exhausted all other legal remedies, including a direct appeal." Utah Code Ann. § 78B-9-102(1) (LexisNexis 2012). The City contends that the reference to exhaustion of all legal remedies makes filing a direct appeal a prerequisite to obtaining postconviction relief. The Utah Supreme Court, however, has recognized that "a defendant who simply fails to file an appeal within the time limits required by rule 4(a) of the Utah Rules of Appellate Procedure would reasonably be considered to have exhausted any remedies he might have obtained thereby for purposes of the PCRA." *Manning v. State*, 2005 UT 61, ¶ 24, 122 P.3d 628; *see also Oseguera v. State*, 2014 UT 31, ¶¶ 4–5, 19, 332 P.3d 963 (explaining, in a case where the facts suggested that the defendant had not filed a direct appeal, that the defendant had

to seek relief pursuant to the PCRA). Valenzuela-Lozoya's PCRA claim therefore is not barred for failure to exhaust legal remedies simply because he failed to file a direct appeal.

¶17   The City argues that Valenzuela-Lozoya's failure to appeal nevertheless bars his PCRA claim because he could have raised the claims he now makes in his postconviction petition in a direct appeal to the district court.[6] The City points out that under the PCRA, a defendant "is not eligible for relief . . . upon any ground that . . . could have been but was not raised at trial or on appeal." *See* Utah Code Ann. § 78B-9-106(1)(c). And the Utah Supreme Court has concluded that this requirement applies to cases originating in justice court: "[A PCRA] challenge to [a defendant's] justice court convictions is barred by his failure to seek a trial de novo in the district court." *Peterson v.*

---

6. Generally, a defendant who is sentenced on the same date that he enters his guilty plea cannot challenge a purported defect in the plea process in a direct appeal because such a challenge has to be made before sentencing. Utah R. Crim. P. 11(e)(8) (noting that a defendant who has entered a guilty plea has only a limited right to appeal); *see also* Utah Code Ann. § 77-13-1(2)(c) (LexisNexis 2012) ("Any challenge to a guilty plea not made [by requesting to withdraw the plea before sentencing] shall be pursued under . . . [the] Postconviction Remedies Act."). "[T]he appeals process from a justice court decision is unique," however, and even a defendant dissatisfied with just his sentence has the opportunity to "undergo a trial de novo in the district court." *Lucero v. Kennard*, 2005 UT 79, ¶ 11, 125 P.3d 917 (citation and internal quotation marks omitted). Thus, had defense counsel sought a trial de novo, the only appeal mechanism available to Valenzuela-Lozoya, counsel would have assured Valenzuela-Lozoya the right to a trial, thus affording him the relief he sought—the effective nullification of his guilty plea.

*Kennard*, 2008 UT 90, ¶ 7, 201 P.3d 956 (citation and internal quotation marks omitted). But the PCRA provides an exception to this procedural bar where "the failure to raise that ground [on appeal] was due to ineffective assistance of counsel." Utah Code Ann. § 78B-9-106(3).

¶18   In requesting postconviction relief, Valenzuela-Lozoya asserted that his counsel was ineffective for failing to seek a trial de novo given the constitutional defects in his plea and the plea's immigration consequences. Because a claim of ineffectiveness surmounts the procedural bar for claims that should have been brought on direct appeal, we now turn to that claim.

### III. We Remand for Further Consideration of Valenzuela-Lozoya's Ineffective Assistance of Counsel Claim.

¶19   There are two aspects to Valenzuela-Lozoya's ineffective assistance of counsel claim. First, the district court treated Valenzuela-Lozoya arguments about the rule 11 violation as a claim that counsel was ineffective for failing to seek a trial de novo. Accordingly, as we discussed above, the court then went on to assess whether counsel was ineffective in protecting Valenzuela-Lozoya from a constitutionally defective plea under the wrong legal standard or in failing to seek a trial de novo in the face of such an error. *See Ross v. State*, 2012 UT 93, ¶ 24, 293 P.3d 345 (explaining that in "determin[ing] whether counsel was ineffective for failing to raise an issue on appeal, [the reviewing court] examine[s] the merits of the omitted issue" (citation and internal quotation marks omitted)).

¶20   The second aspect is that defense counsel was ineffective for failing to inform Valenzuela-Lozoya of the immigration consequences of his guilty plea, namely the risk of deportation and the negative effect of a conviction on his eligibility for DACA. The City contends that Valenzuela-Lozoya's counsel did not have to inform Valenzuela-Lozoya that he was at risk of

deportation by entering a guilty plea because he was already at risk for deportation by virtue of his undocumented status in the United States. The City also argues that because Valenzuela-Lozoya entered his plea *before* DACA was even announced, much less implemented, counsel could not have notified him of DACA or known to advise him to seek immigration advice. Apparently because the district court ruled in Valenzuela-Lozoya's favor on the rule 11 issue, the court did not address this issue in overturning Valenzuela-Lozoya's conviction.

¶21    The City asks this court to resolve on appeal both aspects of Valenzuela-Lozoya's ineffectiveness claim. We decline the invitation because both issues seem to involve questions of fact that have not yet been addressed by the district court.[7] For instance, although Valenzuela-Lozoya concedes that DACA had not yet been announced when he entered his guilty plea, he contends that there were rumors about its probable implementation at the time he was considering a plea and that those rumors, coupled with the fact that DACA was announced prior to the expiration of his appeal period, were enough to require defense counsel, at the very least, to advise him to speak to an immigration specialist. Whether counsel was ineffective in not seeking a trial de novo in the face of the purported defects in the plea process is similarly fact-dependent, as it requires consideration of the totality of the circumstances surrounding Valenzuela-Lozoya's guilty plea. This sort of fact-based inquiry

---

7. Because the development of a pertinent factual record seemed to have been curtailed by the district court's decision to resolve the case at an order to show cause hearing, we also believe it imprudent for us to undertake to resolve the issue simply on the facts before us.

is the province of trial courts, not courts of appeal.[8] Accordingly, we reverse the grant of postconviction relief and remand to the district court for resolution of Valenzuela-Lozoya's postconviction claim of ineffective assistance of counsel.

––––––––––

8. By noting these potential fact questions, we do not intend to express any opinion as to whether such facts are legally relevant to the resolution of the ineffectiveness of counsel claim that the district court must resolve on remand. Furthermore, we do not mean to limit the scope of the fact questions that might be pertinent to resolution of that issue.